Bobbie Lee **ELLIS**, Appellant,

v.

The **STATE of Texas,** Appellee.

No. 01–93–00057–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

May 12, 1994.

Tony Aninao, Houston, for appellant.

John B. Holmes, Jr., J. Harvey Hudson, Russel Turbeville, Harris County, for appellee.

Before OLIVER–PARROTT, C.J., and HUTSON–DUNN and MIRABAL, JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

Appellant was convicted by a jury of theft of property valued at $20,000 or more, pursuant to one scheme or a continuing course of conduct in accordance with Tex.Penal Code Ann. § 31.09 (Vernon 1989)[1]. The trial court found an enhancement paragraph true and sentenced appellant to 15 years confinement. We affirm.

In his first point of error, appellant contends that the evidence was insufficient to sustain his conviction. In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154, 165 (Tex.Crim. App.1991).

Appellant operated Invest–A–Car, a business that purported to assist people with credit problems in locating and financing automobiles. The State called eight different complainants who all testified about their dealings with appellant. Mr. Farley testified that he wanted to buy a minivan, but could not obtain credit through a dealership due to credit problems. He contacted appellant at

---

1. Section 31.09 permits the amounts of numerous thefts occurring pursuant to a continuous course of conduct to be aggregated to determine the grade of the offense; here, a second degree felony.

Invest–A–Car, who assured Mr. Farley that he would be able to obtain financing for Mr. Farley and get him the vehicle of his choice. Appellant told Mr. Farley that there was a $375 up front fee, $125 of which was nonrefundable. Two days after entering into this agreement, Mr. Farley gave appellant a $4,000 cashier's check as a down payment because appellant told him this would facilitate his ability to get the vehicle. Appellant never showed Mr. Farley any vehicles nor directed him to any car lots. Mr. Farley requested a refund of his $4,000 on a preprinted "request for refund" form, but appellant never returned the money and Mr. Farley never obtained a vehicle.

Mr. Narvaez testified that he also entered into a similar arrangement with appellant, a $375 up front fee in exchange for appellant obtaining financing for Mr. Narvaez after he or Mr. Narvaez found a car to his liking. The next day, Mr. Narvaez found a car he liked, so he and appellant went to the car lot the following day. Appellant told Mr. Narvaez that he could not get that car because it was already sold. Mr. Narvaez kept returning to the same dealership to find another car, only to discover that the first car remained on the lot for some two months. Mr. Narvaez informed appellant that the car he wanted was still available, but appellant ignored him, and stopped returning his phone calls. Mr. Narvaez went by appellant's office two or three times a week to get his money back and appellant told him that, if he kept being a nuisance appellant "would blow his head off." Mr. Narvaez never received a car or a refund.

Ms. Francois testified that the initial agreement was the same, but appellant had told her he could get her into a vehicle within three weeks. Ms. Francois applied to her own credit union for financing and was approved. She then found a vehicle she liked at McDavid Honda. It was her understanding that she was purchasing the car from McDavid Honda through Invest–A–Car as an agent. Appellant delivered the car to Ms. Francois after she had given appellant more than $2,300, in addition to the $125 nonrefundable amount. She gave appellant a $13,994 cashier's check from her credit union made out to her and Invest–A–Car. When she received the car, it had temporary, paper, license plates that were valid for only 20 days. For a six-month period, Ms. Francois attempted to get the permanent plates from appellant, but he kept giving her temporaries because of some error in the paperwork. Appellant assured her that he would take care of it and she did not need to contact McDavid Honda. Finally, unable to get any help from appellant, Ms. Francois called McDavid Honda herself and was told to bring the vehicle into the dealership in order to get the situation straightened out. Upon arrival, the car was repossessed. The sales manager at McDavid testified that appellant had only given the dealership $200 and a worthless bankdraft to acquire the car. The sales manager called appellant every other day for months in order to resolve the dispute and secure payment. Appellant eventually brought in a $8,000 cashier's check, but the balance was never paid. The car was never returned to Ms. Francois, nor any of her money, and her credit union is still making a monthly $339 payroll deduction.

Next, Ms. Umoja testified that she had given appellant a $1,375 check, representing a $375 broker's fee and half of a $2,000 down payment. After about a week, Ms. Umoja found a vehicle on her own and asked for her money back, minus the $125 nonrefundable fee. Appellant did not return any of the $1,375 to Ms. Umoja.

Four other witnesses testified about similar dealings they had with appellant. None of the complainants ever received a car or a refund of their money. Appellant argues that the evidence is insufficient to prove he had the criminal intent to appropriate the funds by deception. Section 31.03(a) of the Texas Penal Code (Vernon 1989) provides that a person commits the offense of theft by unlawfully appropriating property with the intent to deprive the owner of such property. Under the Penal Code, appropriation is unlawful if it is without the owner's effective consent. TEX.PENAL CODE ANN. § 31.03(b)(1) (Vernon 1989). Consent is not effective if induced by deception. TEX.PENAL CODE ANN. § 31.01(4)(A) (Vernon 1989). The jury charge defined deception as follows:

"Deception" means promising performance that is likely to affect the judgment of another in the transaction and that the defendant does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that defendant did not intend to perform or knew the promise would not be performed.

*See* TEX.PENAL CODE ANN. § 31.01(2) (Vernon 1989).

Appellant contends that the evidence only demonstrates his failure to perform the agreed upon service and thus was insufficient to establish a criminal intent. We disagree.

■ Theft convictions resulting from otherwise contractual civil disputes may warrant reversal for insufficient evidence where there is no evidence supporting the requisite criminal intent. *See Peterson v. State,* 645 S.W.2d 807, 811–12 (Tex.Crim.App.1983); *Phillips v. State,* 640 S.W.2d 293, 294 (Tex.Crim.App. 1982). Both of these cases are readily distinguishable from the facts before us. Unlike here, the underlying dispute in both of these cases involved construction contracts between a complainant and a defendant.

In *Peterson,* the court held that the evidence was insufficient to prove that a contractor had obtained money from a client by deception. The complainant had made a series of payments to Peterson as the designated work continued to progress. *Peterson,* 645 S.W.2d at 808. Peterson ran into cash-flow problems as some of the jobs he had completed failed to pay him in a timely manner. *Id.* at 809. Due to his financial difficulties, he was unable to pay some of his suppliers. *Id.* This caused delays in the completion of the project, which resulted in the complainant's dissatisfaction. *Id.* at 808–809. At the time of these delays, the project was 95 percent completed. *Id.* at 809. The court held that the State had not sustained its burden of proof to show Peterson had the requisite intent. *Id.* at 811–12.

Likewise, the court in *Phillips* held that there was insufficient evidence to convict a contractor of theft by deception who failed to perform under the terms of a contract. A contractor entered into an agreement to build an addition to the complainant's home. *Phillips,* 640 S.W.2d at 294. After receiving a down payment, the contractor told the complainant on several occasions that he was going to be unable to perform per the agreement because he was having trouble with the plumbing subcontractors. *Id.* The court held that the only evidence presented was Phillips' failure to perform and that was insufficient to prove deception. *Id.*

Unlike in *Peterson* and *Phillips,* the record before us shows deception, and not simply a failure to perform. This is not a case of partial performance. All eight complaining witnesses testified that they had paid appellant based on his assurances that he would be able to obtain financing for them. None of the complainants ever received anything for the money they relinquished to appellant. None of the money was ever returned to the complainants pursuant to the purchase agreement. Contrary to his assertions, appellant did not perform any part of the agreements. Appellant points to his eventual delivery of $8,000 to McDavid Honda as partial performance. This is not, however, performance under the terms of the contract. The car was repossessed, Ms. Francois was never returned any portion of the $2,300 she gave appellant, and her credit union continues to make monthly payroll deductions to repay the loan.

■ Appellant's criminal intent may be inferred from these surrounding circumstances. *Coronado v. State,* 508 S.W.2d 373, 374 (Tex.Crim.App.1974); *Reed v. State,* 717 S.W.2d 643, 645–46 (Tex.App.—Amarillo 1986, no pet.). After reviewing the record in a light most favorable to the verdict, we find that the evidence was sufficient to support the conviction. A rational juror could have found that appellant had no intention of fulfilling his contractual obligations, since he never did so, and that his promises to the complainants were merely a ruse to accomplish theft by deception. We overrule appellant's first point of error.

■ In his second point of error, appellant contends that the evidence was insufficient to support his conviction of theft in an aggre-

gate amount over $20,000. The total amount appellant unlawfully appropriated from the complaining witnesses was $25,175.[2] Appellant contends that his nonrefundable fees and the $8,200 he paid to McDavid Honda should be deducted, which would make the amount stolen less than $15,000 rendering the evidence insufficient to support his second degree felony conviction.

Appellant's contention that he is entitled to an offset of the $8,200 he eventually gave to McDavid Honda ignores the fact that it is Ms. Francois who is named in the indictment, not McDavid Honda. It is Ms. Francois who testified that she gave appellant a $13,994 check from her credit union; a debt she is still paying off today in the form of monthly payroll deductions. It is irrelevant that appellant eventually gave McDavid Honda some of the money he stole from Ms. Francois. This does not constitute partial performance under the agreement, and appellant is not entitled to an offset of this amount. Thus, even if the nonrefundable fees are deducted from the aggregate amount charged in the indictment as appellant requests, the evidence would still be sufficient to convict appellant of second degree felony theft by deception. We overrule appellant's second point of error.

■ In his third point of error, appellant contends that the trial court erred in denying his motion for mistrial during the State's closing argument because the argument was improper. During his closing argument, appellant emphasized the following theory:

DEFENSE: What you have heard folks are excerpts from an on-going continuing business. What you heard from an on-going business where a person had an office with at least two secretaries, salespeople, there at least a period of two years.

. . . .

You got eight people out of a two year period. Now if you were doing that kind of business, number one, eight people can't make that kind of money, everybody said he had a very nice office, very professional office. Mr. Ellis had two secretaries and three salesmen working there for him. You don't have that type of operation. I'm going to take your money and run operation.

The State responded in the following fashion:

STATE: How do you judge people's intent. Not by what they say, but by what they do over and over and over and over again.

The defense would have you believe these are only eight people. Well, you know we based our verdict on what we hear in the courtroom and when I heard he was zero for eight over seven months, the defense wants you to believe there are loads and loads of satisfied customers out there, must have been because he had a computer and a staff.

But those people don't come to my office and complain, but Mr. Mock took them on.

At this point, the defense objected and the court sustained the objection and instructed the jury to disregard the prosecutor's comments. The defense moved for a mistrial, which the judge denied. The State continued:

STATE: I was responding to remarks he made, Your Honor.

THE COURT: You heard my ruling.

STATE: Did anybody come in from any banks, did anybody come from any car lots and say we furnished cars through Mr. Ellis? Nobody.

Again, the defense objected and the court sustained, but refused to grant a mistrial. Appellant contends that was error.

■ It is a well-settled rule that the State may comment in argument on the failure of a defendant to call competent and material witnesses. *Carrillo v. State*, 566

---

2. The record reflects that the following amounts were paid to appellant by the eight complainants:

| | |
|---|---|
| Juvenito Narvaez | $375 |
| Eddie Farley | $4,375 |
| Billie Francois | $14,975 |
| Marilyn Scott | $500 |
| Aduje Omoja | $1,375 |
| Ernest Walker | $1,500 |
| Taura Dailey | $575 |
| Lona Gomez–Lee | $1,500 |
| Total | $25,175 |

S.W.2d 902, 912 (Tex.Crim.App.1978); *Reynolds v. State,* 848 S.W.2d 785, 790 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd); *see also Livingston v. State,* 739 S.W.2d 311, 337–38 (Tex.Crim.App.1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). The State may also argue that the reason for such failure is that any such testimony would be unfavorable to the defense. *Carrillo,* 566 S.W.2d at 912; *Reynolds,* 848 S.W.2d at 790. These remarks were not improper. We overrule appellant's third point of error.

In his fourth point of error, appellant contends that he should be granted a new trial because one of the jurors was taking notes during the State's case-in-chief. The trial judge confiscated the notes prior to deliberations and explained that notetaking was prohibited.

Appellant asks us to hold that this was reversible error, without conducting a harm analysis. We decline to do so. Appellant has failed to demonstrate how he was harmed by the notetaking in this case. We overrule appellant's fourth point of error.

We affirm the judgment of the trial court.