Opinion issued September 28, 2006








 

 

In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00955-CR




PATRICK FRANKLIN, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 337th District Court
Harris County, Texas
Trial Court Cause No. 974028

     

MEMORANDUM OPINION

          A jury convicted appellant, Patrick Franklin, of theft of over $200,000 and
assessed punishment at 48 years in prison. See TEX. PEN. CODE ANN. § 31.03(a),
(b)(1) (Vernon 2003). We determine whether the evidence was factually sufficient
to show that appellant stole over $200,000 from the complainant, Michele Sprinkle. 
We affirm. 
Facts
          Augusta Burney, a licensed attorney in Texas, opened a private practice in
2002 that specialized in real estate and corporate law. Burney decided to expand
more into real estate and purchased a franchise of American Title Company
(“American Title”) in early 2003. Through this franchise, American Title set up at
Southwest Bank of Texas an escrow account in which cash from third parties would
be held in trust until financing was complete. Both Burney and Sprinkle, the Vice-President of the American Title Company in Houston that oversaw 50 branches in the
Houston area, had access to the funds held in the escrow account.
          Appellant owned Arista Acquisitions, L.L.C. and was introduced to Burney
through a distant cousin whom Burney had never met. Burney testified that appellant
seemed like a very successful business man and often mentioned many successful
people in the real estate business. Appellant and Burney entered into an agreement
that appellant would bring Burney about 100 closings a month, with Burney’s
business profiting 10% per closing.
          The first closing under this agreement, for $60,000, went very smoothly. 
Appellant then brought Burney a file for Larry Ramming and another for Maurice
Washington. Appellant introduced Burney to a man whom Burney believed to be
Ramming; however, the man whom appellant introduced to her as Ramming was not
the true Ramming, who was later presented at trial. Appellant claimed that the
Ramming deal was for $3.8 million dollars in refinancing and that the man whom
appellant presented to Burney as Ramming agreed to wire $175,000 to American
Title to secure his financing. A wire transfer for $175,000 was received in the
American Title escrow account on October 22, 2003 from Dean–Witter, but Burney
mistakenly posted it to the Maurice Washington requisition sheet.



          The Maurice Washington file, in contrast, was a $53,000 loan-financing deal. 
Burney received a call from a woman purporting to be from Southwest Bank of
Texas, confirming that a $53,000 wire transfer from Chase Manhattan was received
in the American Title escrow account. Telephone confirmation of monies received
was a common practice. Burney testified that she assumed that this money was for
the Washington deal and posted it to the requisition sheet for the Washington
account.
          Appellant then faxed a letter to American Title, requesting a refund on all
money from Chase Manhattan and Dean–Witter in the Washington file because
appellant was no longer financing the loan. Burney stated that she relied on the letter
and wrote two refund checks to appellant on October 22, 2003: one for $53,000 (the
money from Chase Manhattan) and another for $175,000 (the money from
Dean–Witter). The next day, appellant converted the checks into cashiers checks,
payable to Arista Acquisitions; converted the $53,000 cashiers check into cash; and
deposited the $175,000 cashiers check into his Compass Bank checking account. 
Over the next week, appellant spent over $150,000 on rent, credit-card debt, cash
withdrawals, and a new Mercedes.
          When the escrow account came up short by $53,000, Sprinkle contacted
Burney. After they investigated, they learned that the $53,000 had never been wire
transferred to American Title. Appellant was notified of the mistake, and he wrote
a reimbursement check for $53,000; however, the check later bounced. Appellant
reassured Sprinkle that there was a bank error and forwarded an alleged letter from
Compass Bank detailing the bank error. Sprinkle and Burney later learned that the
letter did not originate from Compass Bank.
          Further investigation by Sprinkle also proved that the $175,000 that was
reimbursed to appellant should have been posted to the Ramming deal, not to the
Washington deal. Ramming also became skeptical of appellant’s work progress and
requested that his funds be returned to him by American Title, only to find out that
the funds had been released to appellant four months earlier. Ramming testified that
he felt that he had been defrauded by appellant from the beginning.
          Concerning a separate transaction, Michael Garfield testified that appellant had
agreed to provide his company with $3 million in funding. To that end, appellant
requested that Garfield place $1 million in an escrow account. Garfield and appellant
further negotiated the amount to be placed in escrow and agreed on $70,000, after
appellant told Garfield that appellant had secured the $3 million funding from an
investor. After the money was wired to appellant, he insisted that Garfield complete
extra paperwork and continued to stall on the deal. Thereafter, Garfield was unable
to contact appellant, Garfield was never reimbursed the $70,000, and Garfield never
received the funding.
Sufficiency of the Evidence
          In one point of error, appellant contends that the evidence is factually
insufficient to support his conviction for theft of over $200,000. Specifically,
appellant contends that the evidence was factually insufficient to show that he
unlawfully appropriated over $200,000 of cash owned by Sprinkle with the intent to
deprive her of that property without her consent. See TEX. PEN. CODE ANN. §
31.03(a), (b)(1). 
 
A.      Standard of Review
          In our factual-sufficiency review, we view the evidence in a neutral light. 
Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). We must review all
the evidence and give proper deference to the jury findings. Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997). The jury is the sole judge of the weight of
the evidence and of the credibility of the witnesses, and the verdict should be set
aside only if manifestly wrong and unjust. Id. In a factual-sufficiency review, we
must also consider the most important evidence on which the appellant relies and that
he claims undermines the jury’s verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex.
Crim. App. 2003).
          The evidence may be factually insufficient in two different ways. Zuniga, 144
S.W.3d at 484. First, the evidence supporting the verdict, when viewed in isolation,
may be too weak to support a finding of guilt beyond a reasonable doubt. Id. 
Second, there may be evidence that supports the verdict and evidence that is contrary
to the verdict, but when weighed together, the contrary evidence may be strong
enough to prevent the beyond-a-reasonable-doubt standard from being met. Id. at
484–85. 
B.      The Law
          The indictment alleged that appellant had committed theft of cash over
$200,000 by having unlawfully appropriated property with the intent to deprive the
owner of the property. See TEX. PEN. CODE ANN. § 31.03(a). “Appropriation of
property is unlawful if it is without the owner’s effective consent.” Id. § 31.03(b)(1). 
“Consent is not effective if induced by deception or coercion.” Id. § 31.01(3)(A). 
“Owner means a person who has title to the property, possession of the property,
whether lawful or not, or a greater right to possession of the property than the actor.” 
Id. § 1.07(a)(35)(A). An individual or employee who is in custody or control of
property is deemed to be the special owner of said property. Harrell v. State, 852
S.W.2d 521, 523 (Tex. Crim. App. 1993).
C.      Factual Sufficiency of the Evidence
          In his sole point of error, appellant argues that the evidence is factually
insufficient to support his conviction for theft of over $200,000. Appellant argues
both that the evidence of guilt is too weak to support his conviction and that there is
overwhelming evidence contrary to the verdict. He first argues that the evidence
proves that Burney intentionally and knowing misappropriated the money that
appellant was convicted of stealing. Appellant also argues, in the alternative, that
Sprinkle owned only $53,000 of the cash and that, therefore, the evidence is factually
insufficient to prove that he stole over $200,000. 
 
          In support of his first argument, appellant argues that Burney, not he,
misappropriated the money when she wrote two checks to appellant after having
received appellant’s written request for a refund of all money related to the
Washington deal. Appellant argues that Burney, earlier the same day, had
erroneously posted two deposits to the Washington requisition sheet. We cannot say,
however, that the cited evidence greatly outweighs the contrary evidence, set out
above, showing that Burney mistakenly relied on appellant’s representations in
writing the checks to him. Nor does appellant’s cited evidence make the verdict
manifestly unjust. The State also presented proof that appellant had used deception
in the past to talk other people out of their money: specifically, Ramming and
Garfield. This evidence, and the other evidence supporting the verdict that we set out
earlier, is not so weak as to preclude a finding of guilt beyond a reasonable doubt. 
Moreover, deference should be given to the jury’s findings because the jury is free to
accept or to reject any or all of the evidence presented and may also draw reasonable
inferences from basic facts to determine ultimate facts. See Clewis v. State, 922
S.W.2d 126, 133 (Tex. Crim. App. 1996). The jury was free to disbelieve appellant’s
testimony that the two checks for $228,000 were reimbursement for investments in
Burney’s business.
 
          When all of the evidence is viewed in a neutral light, we hold that the jury
could have concluded beyond a reasonable doubt that appellant had no intention of
repaying Burney the money that she had mistakenly given him and that appellant had
deceived Burney into turning over the $228,000 in the first place. See Ellis v. State,
877 S.W.2d 380, 381–83 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d). 
          In support of his second, alternative argument, appellant contends that Sprinkle
owned only $53,000 because Ramming, who had suffered the actual loss, had a
greater right of possession to the $175,000. This theory is without merit because, as
Vice-President of American Title, Sprinkle was in control and had custody of
Ramming’s $175,000 while it was in the escrow account. See TEX. PEN. CODE ANN.
§ 1.07(a)(35)(A) (defining “owner” as one who has possession of property). 
Evidence that a president or vice-president has control or custody over certain funds
of an organization is sufficient to establish ownership of the funds by such person. 
See Pabst v. State, 721 S.W.2d 438, 443 (Tex. App.—Houston [1st Dist.] 1986, no
pet.). Sprinkle’s title of Vice-President of American Title was sufficient to establish
her ownership of the $228,000 cash. Sprinkle was also the special owner of the total
$228,000 in the escrow account and had a greater right to possession than did
appellant. See Harrell, 852 S.W.2d at 523 (holding that individual or employee who
is in custody or control of property is deemed to be special owner of said property). 
We thus hold that the evidence is not factually insufficient to show, beyond a
reasonable doubt, that Sprinkle owned the $228,000 that appellant was convicted of
stealing. Therefore, we further hold that the evidence is factually sufficient to support
appellant’s conviction for theft over $200,000.
          We overrule appellant’s sole point of error. 
Conclusion
We affirm the judgment of the trial court.



                                                                 Tim Taft
                                                                 Justice

Panel consists of Chief Justice Radack and Justices Taft and Nuchia.

Do not publish. See TEX. R. APP. P. 47.2(b).