

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-039-CR

CASEY J. MOORE                                                        APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

-----------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

-----------

## MEMORANDUM OPINION[1]

-----------

### I. INTRODUCTION

In two points, appellant Casey J. Moore appeals his conviction for theft of property with a value of more than $1,500 but less than $20,000, arguing that the evidence at trial was both legally and factually insufficient to sustain the conviction.  We will affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. BACKGROUND

Moore's grandmother, Eloise Parmes, received widow's benefits from the Department of Veteran's Affairs ("VA"). The VA directly deposited $935 per month into a Bank of America checking account held jointly by Mrs. Parmes and Moore. The direct deposits from the VA were the only deposits made into this joint checking account. By law, Mrs. Parmes's widow's benefits were to cease upon her death.

Mrs. Parmes died on November 18, 2002. No one informed the VA of her death, and for approximately a year and a half the VA continued to directly deposit the benefits into the joint checking account. The VA deposited a total of $15,212 into Mrs. Parmes's and Moore's joint account between the time of her death and the termination of the account. After Mrs. Parmes's death, Moore wrote checks totaling $14,100 from the joint checking account to Texas Express Movers, a business owned by him and his wife.

The VA eventually learned of Mrs. Parmes's death and ceased making the benefit payments. The VA then began an investigation into the benefits it had paid after Mrs. Parmes's death that were no longer in the joint account. During that investigation, Moore informed Agent Bryan Sewell that Mrs. Parmes had told him that he could use the benefit payments to pay for moving and storing her household goods. Moore claimed that he wrote checks from the joint

2

checking account to Texas Express Movers and used cash or credit cards to pay a third party moving company, Deluxe Movers, to move and store Mrs. Parmes's belongings. Texas Express Movers paid $2,000 to Deluxe Movers between the time of Mrs. Parmes's death and the termination of the joint checking account.

Following the investigation, Moore was indicted for theft of property from Agent Sewell.[2] A jury found Moore guilty of theft of more than $1,500 but less than $20,000. The trial court assessed his punishment at two years' confinement, probated for five years, and $13,329 in restitution. This appeal followed.

### III. LEGALLY & FACTUALLY SUFFICIENT EVIDENCE TO SUPPORT A FINDING OF GUILT[3]

In his first and second points, Moore argues that the evidence at trial was legally and factually insufficient to support the jury's finding that he intended to unlawfully appropriate the money deposited by the VA into the joint checking account.

---

[2] To show corporate ownership, it is sufficient to allege ownership in the employee who has care, custody, and control of the property, the "special owner." *Harrell v. State*, 852 S.W.2d 521, 523 (Tex. Crim. App. 1993).

[3] In his brief, Moore combines his legal and factual sufficiency claims into a single discussion. We will address them separately. *See Laster v. State*, 275 S.W.3d 512, 519 (Tex. Crim. App. 2009) (holding that appellate courts may not combine legal and factual sufficiency analyses).

## A. THEFT

Under Texas law, a theft is committed when a person unlawfully appropriates property with intent to deprive the owner of that property. Tex. Penal Code Ann. § 31.03(a) (Vernon Supp. 2008); *Peterson v. State*, 645 S.W.2d 807, 811 (Tex. Crim. App. 1983). Appropriation of property is unlawful when it is without the owner's effective consent. Tex. Penal Code Ann. § 31.03(b)(1). "Appropriate" means to acquire or otherwise exercise control over property other than real property. *Id*. § 31.01(4)(B). "Deprive" means to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment is lost to the owners. *Id*. § 31.01(2)(A). "Effective consent" includes consent by a person legally authorized to act for the owner. *Id*. § 31.01(3).

For a person to act with intent, it must be his conscious objective or desire to engage in a particular conduct or a particular result. *Id.* § 6.03(a) (Vernon 2003). Intent is most often proved through the circumstantial evidence surrounding the crime, rather than through direct evidence. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991), *cert. denied*, 504 U.S. 974. In determining whether the defendant had criminal intent to commit theft, we may consider whether the defendant experienced personal gain from the property obtained from the owner. *See Christensen v. State*, 240 S.W.3d 25,

4

32 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *King v. State*, 17 S.W.3d 7, 17 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (noting that evidence that King had criminal intent was shown in part by his use of complainant's money for sole purpose of paying personal expenses and purchasing items for personal benefit).

**B. LEGALLY SUFFICIENT EVIDENCE**

*1. Standard of Review*

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008). Thus, when performing a legal sufficiency review, we

5

may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778; *see also Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991) (resolving conflicting inferences concerning appellant's intent in favor of prosecution).

### 2. Legally Sufficient Evidence of Intent to Deprive

Here, Moore transferred approximately $15,000 from the joint checking account into an account for his business, Texas Express Movers. Although Moore told Agent Sewell that he then used the funds to pay Deluxe Movers—using cash and credit cards—to move and store his grandmother's household items, the evidence showed that he paid Deluxe Movers only $2,000, leaving approximately $13,000 of the monies Moore took unaccounted for by this explanation. The record reflects that Moore spent funds from the

6

Texas Express Movers account at various establishments, including a pub, grocery stores, and restaurants.

Moore argues that the State failed to prove that he appropriated the property with the requisite intent because Mrs. Parmes gave him permission to use the funds to move and store her goods. But by law after Mrs. Parmes died she was not entitled to receive and did not own any of the VA benefits deposited into the joint checking account.[4] Agent Sewell testified that he was the de facto owner of all VA funds deposited in the joint checking account following the death of Mrs. Parmes. And no evidence exists that Moore at any point acquired the effective consent of either the VA or Agent Sewell to take the VA widow's benefits deposited in the joint checking account. He simply removed the funds from the joint checking account and deposited them into his own business account.

Moore also contends that he did not know he had a duty to inform the VA of Mrs. Parmes's death and did not know that he was not entitled to spend the VA funds after her death. Consequently, he argues that these mistakes of fact negated the requisite mental state for theft.

---

[4] *See* 38 U.S.C. § 5301(a)(1) (West Supp. 2009) (providing that benefits from the VA are generally non-assignable).

7

Mistake-of-fact instructions were included in the jury charge. The jury was instructed that "it is a defense to prosecution that a person through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense charged." The jury charge also included an application paragraph on mistake of fact and instructed the jury to find Moore not guilty if they found that Moore, "through mistake, formed a reasonable belief that he was entitled to receive and disburse monies received, if any, from the Veteran's Administration."

Whether Moore's purported mistake of fact was reasonable and negated the requisite criminal intent was for the jury to decide. *See Granger v. State*, 3 S.W.3d 36, 39 (Tex. Crim. App. 1999); *see also Winkley v. State*, 123 S.W.3d 707, 712 (Tex. App.—Austin 2003, no pet.). Although Moore claimed a purported mistake of fact and offered an explanation for his conduct, the jury was not required to believe him. *See Saxton v. State*, 804 S.W.2d 910, 912–14 (Tex. Crim. App. 1991). The jury could have reasonably concluded that an ordinary and prudent person in Moore's position would have understood that he was not entitled to his deceased grandmother's widow's benefits from the VA. *See Winkley*, 123 S.W.3d at 712; *Bang v. State*, 815 S.W.2d 838, 841 (Tex. App.—Corpus Christi 1991, no pet.). The jury could have inferred that Moore possessed the specific intent to commit theft based on the facts

8

that he never informed the VA of his grandmother's death, never applied to receive her benefit funds, and removed the entirety of those funds from her account and placed them in his own business account. *See Coronado v. State*, 508 S.W.2d 373, 374 (Tex. Crim. App. 1974) ("Specific intent to commit theft can be inferred from the surrounding circumstances."); *Ellis v. State,* 877 S.W.2d 380, 383 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

Viewing all of the evidence in the light most favorable to the prosecution and resolving all conflicting inferences in favor of the prosecution, we hold that a rational trier of fact could have found the essential elements of theft of more than $1,500 but less than $20,000 beyond a reasonable doubt, including that Moore intended to deprive the VA of its funds and that Moore's explanation for his actions was merely part of a ruse to accomplish the theft. *See* Tex. Penal Code Ann. § 31.03(a); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778; *Matson*, 819 S.W.2d at 846.

### C. FACTUALLY SUFFICIENT EVIDENCE TO SUPPORT A FINDING OF GUILT

#### 1. Standard of Review

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Neal v. State*, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129

9

S. Ct. 1037 (2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the factfinder's. *Johnson v. State*, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record

10

clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9. Our deference in this regard safeguards the defendant's right to a trial by jury. *Lancon*, 253 S.W.3d at 704.

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). Moreover, an opinion reversing and remanding on factual insufficiency grounds must detail all the evidence and clearly state why the finding in question is factually insufficient and under which ground. *Goodman v. State*, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001); *Johnson*, 23 S.W.3d at 7.

### 2. Factually Sufficient Evidence of Intent to Deprive

Viewing the evidence in a light neutral to both parties, our review of the record reveals the following relevant evidence potentially supporting Moore's

11

complaint of factual insufficiency. *See Sims*, 99 S.W.3d at 603. Moore asserted in his written statement[5] that he spent some of the VA funds on packing and moving Mrs. Parmes's belongings, that he did not know he was not entitled to the money, that he did not use the money for personal gain, and that he was not aware that he was doing anything wrong. The general manager at Deluxe Movers testified that Moore stored more than one household worth of furniture at Deluxe Movers' storage facility. Further, the general manager admitted that Deluxe Movers does not properly document every payment made to his company and that Moore could have paid the company more than the $2,000 reflected by company records and receipts.

Regarding Moore's mistaken entitlement to the VA funds, the evidence demonstrates that over a year before Mrs. Parmes died, Moore's name was added to the joint checking account.

Conversely, the following facts contained in the record support the jury's finding that Moore misappropriated the VA funds with the intent to deprive the owner of the funds. *See* Tex. Penal Code Ann. § 31.03(a). Moore never contacted the VA to inform them that Mrs. Parmes — the only eligible beneficiary

---

[5] The handwritten statement introduced at trial as State's Exhibit 6 was written by Agent Sewell during his interview with Moore. Agent Sewell consulted with Moore while writing it and later made a minor wording change to its contents at Moore's request. Moore later declined to sign the statement.

12

of the VA funds and the only person to whom any physical check would have been made—had passed away. During his investigation into the missing funds, Agent Sewell learned that Moore had transferred the funds from the joint checking account into his business account for Texas Express Movers. Although Moore claimed he used these funds to move and store his grandmother's belongings, the evidence showed that Moore paid Deluxe Movers $2,000 from his business account. The list of businesses that received payments from Texas Express Movers' account did not include any businesses other than Deluxe Movers where household goods reasonably could have been stored.

In reviewing the above evidence in a manner favoring neither Moore or the State, we do not believe that the evidence is so weak as to Moore's intent that the jury's determination is clearly wrong and manifestly unjust. *See Lancon,* 253 S.W.3d at 704. Further, the evidence presented by Moore at trial to counter the State's accusation was not of such gravity as to greatly outweigh the evidence supporting the conviction. *See Watson*, 204 S.W.3d at 417. The jury determined to accept the State's version of events over Moore's. We believe that our evaluation on appeal "should not substantially intrude upon

13

the jury's role as the sole judge of the weight and credibility of witness testimony." *Santellan v. State*,939 S.W.2d 155, 164 (Tex. Crim. App. 1997).

Because the record does not clearly reveal that a different verdict is appropriate, we defer to the determination of the jury as to issues of credibility and contradictory testimonial evidence. *See Johnson*, 23 S.W.3d at 8. Consequently, we hold that the evidence is factually sufficient to sustain Moore's conviction. We overrule Moore's second point.

## IV. CONCLUSION

Having overruled both of Moore's points on appeal, we affirm the judgment of the trial court.

SUE WALKER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 9, 2009

14