Timothy Lee RILEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–07–00718–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 18, 2009.

Linda Cryer, Houston, TX, for Appellant.

Carol M. Cameron, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices BLAND, SHARP, and TAFT.*

## OPINION

JIM SHARP, Justice.

A jury convicted appellant, Timothy Lee Riley, of theft of property with a value of $20,000 or more but less than $100,000. *See* TEX. PENAL CODE ANN. § 31.03(a), (b), (e)(5) (Vernon Supp. 2008), § 31.09 (Vernon 2003). The trial court assessed punishment at six years imprisonment, suspended, and placed appellant on community supervision. Appellant brings six points of error, challenging the legal and factual sufficiency of the evidence (points one, two, three, four, and six) and the trial court's venue ruling (point five). We affirm.

## Background

Appellant received money in four different transactions to construct buildings: (1) $5,772 from Charles Thomasson; (2) $9,611 from Roger Krenek and Towana Krenek; (3) $20,425 from Mark Manderscheid and Denise Manderscheid; and (4) $9,175 from Lonnie Friend and Heath Friend. In each of these four situations, appellant accepted the complainants money, began construction, and later ceased work, leaving each of the complainants with an unfinished building. There was testimony at trial that appellant claimed the failure to complete each of the four transactions was due to either problems with the weather, his cash flow, his personal life, difficulties with his employees or subcontractors, or contract disputes with the complainants. Appellant testified at trial that he did not make representations to any of the complainants that he did not intend to fulfill.

## Discussion

■ In points of error one, two, and three, appellant claims the evidence is legally insufficient to support his conviction (point one), factually insufficient to support his conviction (point two), and legally insufficient to show criminal intent (point three). Appellant's brief contains five pages of discussion of case law concerning intent in the context of committing theft. Appellant then makes the following specific argument:

> In the instant case, four complainants testified that Appellant entered into a construction contract with them, three of whom had no completion date for the work to be performed (Vol. VI, p. 10, 12, 22, 30); that they made a series of payments to him as the designated work continued to progress; that Appellant partially performed; that their projects became delayed as Appellant told him he ran into cash-flow problems due to some of the jobs he had completed either not paying him or giving him hot checks, personal problems, weather problems, or employees or sub-contractors not showing up; that they experienced contract disputes with Appellant over whether their payments were for his wages and profits, or materials, or services such as obtaining a building permit for Manderscheid or the behavior of Appellant's crew urinating in Kreneks yard; that none of them completed their project as originally contracted or subsequently modified; and that they made other arrangements to complete their respective projects.

* Justice Tim Taft, who retired from the First Court of Appeals effective June 1, 2009, continues to sit by assignment for the disposition of this case, which was submitted on March 24, 2009.

Appellant testified that he had been in the business for 15 years; that he had 200 customers; that it was something he took pride in; that he was trying to save his business and did not want it to fail; that it was the only thing he knew; that he had to file Chapter 13 bankruptcy; that he had partially performed on all four contracts, but had contract disputes with all four complainants; that he did not know that he was not going to perform nor did he intend not to perform the projects for the respective complainants; that he did not state that he knew that he was not going to complete a project; and that he did not make a representation that he did not intend to fulfill or that he knew he could not fulfill or misstate a fact to try and obtain money.

The facts in the instant case are similar and on point with the said previously recited construction cases precedent. Consequently, this Court should reverse and acquit the Appellant on the basis of legal and/or factual insufficiency and/or insufficient evidence to show criminal intent to commit theft by deception.

We interpret points of error one, two, and three as attacking the sufficiency of intent to commit theft.

A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property. *See* TEX. PENAL CODE ANN. § 31.03(a). Appropriation of property is unlawful if it is without the owner's effective consent. *See* TEX. PENAL CODE ANN. § 31.03(b)(1) (Vernon Supp. 2008). Consent is not effective if it is induced by deception. *See* TEX. PENAL CODE ANN. § 31.01(3)(A) (Vernon Supp. 2008). The indictment charged appellant with committing theft by deception by "creating or confirming by words or conduct a false impression of law or fact that affected the judgment of the Complainant

in the transaction which the Defendant did not believe to be true" and/or "promising performance that affected the judgment of the Complainant in the transaction, which performance the defendant knew would not be performed and/or which performance the defendant did not intend to perform." *See* TEX. PENAL CODE ANN. § 31.01(1), (A), (E) (Vernon Supp. 2008). We will therefore review the sufficiency of the evidence of deception.

The standard of review for legal sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *King v. State,* 29 S.W.3d 556, 562 (Tex. Crim.App.2000).

When conducting a factual-sufficiency review, we view all of the evidence in a neutral light. *Cain v. State,* 958 S.W.2d 404, 408 (Tex.Crim.App.1997). We will set aside the verdict only if (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust or (2) the verdict is against the great weight and preponderance of the evidence. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000). Under the first prong of *Johnson,* we cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, we would have voted to acquit had we been on the jury. *Watson v. State,* 204 S.W.3d 404, 417 (Tex.Crim.App.2006). Under the second prong of *Johnson,* we cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict. *Id.* Before finding that evidence is factually insufficient to support a verdict under the second prong of *Johnson,* we must be able to say, with some objective basis in the

record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.* In conducting a factual-sufficiency review, we must also discuss the evidence that, according to the appellant, most undermines the jury's verdict. *See Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App.2003).

We may not substitute our judgment for that of the fact-finder. *King,* 29 S.W.3d at 563. The fact-finder alone determines what weight to place on contradictory testimonial evidence because that determination depends on the fact-finder's evaluation of credibility and demeanor. *Cain,* 958 S.W.2d at 408–09. As the determiner of the credibility of the witnesses, the fact-finder may choose to believe all, some, or none of the testimony presented. *Id.* at 407 n. 5. The standard for reviewing the factual sufficiency of the evidence is whether, after considering all of the evidence in a neutral light, the jury was rationally justified in finding guilt beyond reasonable doubt. *Watson,* 204 S.W.3d at 415.

Appellant argues that this is nothing more than a civil contract dispute, and as such, appellant's partial performance negates any showing of intent to commit theft through deception. *See, e.g., Jacobs v. State,* 230 S.W.3d 225, 231–32 (Tex.App.-Houston [14th Dist.] 2006, no pet.). Were this a case in which there was but one transaction, we would agree. However, here the evidence of intent to commit theft through deception consists of the pattern or scheme established in each of the four transactions. In each of them appellant accepted the complainants money, began construction, and later ceased work, leaving each complainant with an unfinished building. The jury could find evidence of appellant's intent to commit theft through deception based on inferences from the surrounding circumstances. *See Ellis v.*

*State,* 877 S.W.2d 380, 383 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd) (citing *Coronado v. State,* 508 S.W.2d 373, 374 (Tex.Crim.App.1974)).

Viewing the evidence in the light most favorable to the verdict, there was legally sufficient circumstantial evidence of appellant's intent to commit theft through deception. Viewing all the evidence in a neutral light, including the testimony of appellant and his wife, we also hold that the evidence of appellant's intent to commit theft through deception was not factually insufficient. The jury was free to determine the credibility of the witnesses and choose which testimony it believed. Accordingly, we overrule points of error one, two, and three.

In point of error four, appellant claims the evidence is legally and factually insufficient to establish appellant's acts constituted one scheme or continuing course of conduct. Appellant's complete argument on appeal consists of the following:

> In drafting § 31.09, Tex. Penal Code (Vernon 2003), the legislature did not attach a technical or particular meaning to "scheme" or "continuing course of conduct," thus a court must consider their common meaning. *Johnson v. State* [187 S.W.3d 591 (Tex.App.-Houston [14th Dist.] 2006) ], 011706 TXCA14, 14–04–00718. Webster's 9th Collegiate Dictionary, p. 1050 (1986) defines "scheme" as a plan or program of action or a systematic or organized framework. Black's Law Dictionary, Revised Fourth Edition page 1511 (1968) defines "scheme" as a design or plan formed to accomplish some purpose—a system.

> As a result of the aggregation of the four complainants in the instant case, the cumulative effect is to punish Appellant who has no prior criminal history, as a felon which is beyond the range

possible for the alleged crimes if prosecuted individually.

Moreover, both "scheme" and "continuing course of conduct" infer a systematic criminal intent which is clearly lacking in the instant case. The similarities between Appellant and the four instant complainants go toward the inherent requirements in a construction contract involving bidding, showing a prospective customer your work, and entering into a contract for successive payment amounts and incremental work performance until completion. The fact that the contract dispute resulted in partial performance by Appellant on the work assignments and partial payments by the complainants on the contracts does not rise to the level of systematic criminal intent required to prove a "scheme" or "continuing course of conduct" to allow a § 31.09, Tex. Penal Code aggregation of alleged theft amounts as in the instant case.

■ We first address the argument appellant makes in the second paragraph cited above—that the cumulative effect of Penal Code section 31.09 is to allow the State to aggregate conduct into a single offense that carries with it a higher punishment range than if each instance of the conduct was charged separately. This is clearly what the statute does, and to the extent appellant is challenging section 31.09, it has been waived on appeal because appellant has not preserved any such complaint in the trial court. *See* Tex. R.App. P. 33.1(a).

We now consider the argument appellant makes in the third paragraph cited above—that the evidence is legally and factually insufficient to establish appellant's acts constituted one scheme or continuing course of conduct. Appellant seems to suggest that the statute requires an evidentiary burden on the State to show a prior intent to commit multiple offenses, which appellant describes as "systematic criminal intent." Appellant cites no authority for this, and the plain meaning of the statute does not support this potential argument. *See* Tex. Penal Code Ann. § 31.09 (Vernon 2003) ("When amounts are obtained in violation of this chapter pursuant to one scheme or continuing course of conduct, whether from the same or several sources, the conduct may be considered as one offense and the amounts aggregated in determining the grade of the offense."); *see generally* Tex. Gov't Code Ann. § 311.011(a) (Vernon 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage.").

The one case cited by appellant, *Johnson v. State*, does not support appellant's argument that a "systematic criminal intent" must be proved by the State. *See Johnson*, 187 S.W.3d 591, 603–04 (Tex. App.-Houston [14th Dist.] 2006, pet. ref'd). Instead, *Johnson* reviewed the legal and factual sufficiency of the evidence to support whether a "rational juror could have found that [Johnson's] acts constituted one scheme or continuing course of conduct." *Id.* at 603. Applying the standards for legal and factual sufficiency discussed above, we hold (1) there was legally sufficient evidence for the jury to infer one scheme or continuing course of conduct on appellant's part and (2) the evidence is not factually insufficient in that regard. Accordingly, we overrule point of error four.[1]

In point of error five, appellant contends the trial court erred in denying his motion

---

1. We assume, without deciding, that inherently dissimilar kinds of theft, *e.g.*, appropriating a cow in West Texas and appropriating a checkbook in Dallas, would be susceptible to a legal- and factual-sufficiency challenge if they were aggregated into a single offense.

for a directed verdict regarding his transaction with Roger Krenek and Towana Krenek. At trial, appellant argued as follows: "They [the Kreneks] indicated that their property is in Porter, which is outside of Harris County. It's not in Harris County. There's not any evidence that any of the work was done in Harris County; and therefore, with respect to that particular allegation, I believe that it would be appropriate to file a motion for ... directed verdict as to that incident only." The State responded that under aggregation, it is unnecessary for all the conduct to occur in the same county. The State also introduced evidence that appellant cashed the Kreneks' checks in Harris County.

■ On appeal, appellant cites no authority for his proposition that a single aggregated offense under section 31.09 must consist only of conduct that occurs in the same county. In fact, the Court of Criminal Appeals has held that when theft is aggregated into a single offense section 31.09, the proper county for prosecution is any county in which any of the aggregated conduct occurred, or any element of the conduct. *See State v. Weaver*, 982 S.W.2d 892, 893 (Tex.Crim.App.1998). We overrule point of error five.

In point of error six, appellant argues that the State failed to prove the "actual aggregate amount of money allegedly taken by appellant." Appellant's complete argument is

> All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. Tex. Penal Code § 2.01. In the

instant case, there was a plethora of testimony regarding the contract amounts for each complainant, the partial payments that each complainant made on the contract, as well as the fact that Appellant partially performed under each contract. Consequently, the contract amount per complainant does not apply since none of the complainants paid the respective contract and/or modified contract amount. Partial payments that each complainant testified that they paid correspondent to either materials to be purchased or work to be performed and all testified that Appellant partially performed. Consequently, the record is not clear beyond a reasonable doubt with any of the complainants as to how to determine the amount of money allegedly taken by Appellant with criminal intent with each complainant, much less the cumulated aggravated amount to meet the threshold of a felony.

Other than a reference to Penal Code section 2.01, this point of error is not accompanied by any substantive argument with citation to the record and authority.[2]

The State introduced evidence that the complainants directly paid appellant $44,983, which has a value of $20,000 or more but less than $100,000. We have already overruled appellant's argument that legally and factually insufficient evidence exists of intent to commit theft through deception. We therefore interpret point of error six as a legal sufficiency argument that the State did not prove that the amount actually paid by the complainants, further reduced by the value of appellant's later "partial performance,"[3] was $20,000 or more but less than $100,000.

---

**2.** All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that he has been arrested, confined, or indicted for,

or otherwise charged with, the offense gives rise to no inference of guilt at his trial. Tex. Penal Code Ann. § 2.01 (Vernon 2003).

**3.** We need not, and do not, determine whether valid contracts existed.

Appellant cites no authority for the proposition that if a person unlawfully appropriates property and later gives something of value (goods or services) to the property owner, then the State bears the burden of proof to offset the amount of the unlawfully appropriated property by the value of the later-bestowed goods or services. The concurrence suggests that Penal Code section 31.08(d) requires a deduction for the "partial performance" rendered. *See* TEX. PENAL CODE ANN. § 31.08(d) (Vernon 2003).[4] If the offense were committed at the time appellant ceased work on each of the jobs, then section 31.08(d) might well apply. The offense, however, occurred at the time of the original deceptions. Because the Penal Code requires value to be determined at the time and place of the offense, appellant's post-offense conduct is not relevant to determining value. *See* TEX. PENAL CODE ANN. § 31.08(a) (Vernon 2003).

Nevertheless, even if section 31.08(d) was applicable, it was *appellant's* burden to prove the amount of the offset. *See*

TEX. PENAL CODE ANN. § 31.08(d) ("If the actor proves by a preponderance of the evidence … the amount … so proven shall be deducted from the value of the property or service ascertained[.]"). In this case, in order for the record to establish that the value of the property was less than $20,000, appellant would have had to prove at trial, by a preponderance of the evidence, that the amount of the offset was greater than $24,983 ($44,983 minus $20,000).

Appellant does not cite to any portion of the record establishing that he proved at trial, by a preponderance of the evidence, that the aggregate value of his "partial performance" for all four jobs exceeded $24,983, and we have found no evidence in the record that establishes a value in such amount.[5] Testimony from the complainants, as described in detail in the concurrence, demonstrates that any offset for "partial performance" to which appellant might have been entitled would be less than $24,983.[6]

---

4. Section 31.08(d) provides:

   If the actor proves by a preponderance of the evidence that he gave consideration for or had a legal interest in the property or service stolen, the amount of the consideration or the value of the interest so proven shall be deducted from the value of the property or service ascertained under [the other subsections of section 31.08 pertaining to calculation of value for purposes of theft chapter of penal code.]

   TEX. PENAL CODE ANN. § 31.08(d) (Vernon 2003).

5. Although appellant and his wife testified as to certain amounts spent by him or "owed" to him related to various jobs, no evidence was offered as to the specific value of appellant's actual "partial performance" on the four jobs.

6. Using the calculations in the concurring opinion, the offset would at most be $22,913 ($44,983 minus the $22,070 for which no value was given).

We note also that testimony from the complainants regarding the amount they paid contractors to complete the work or their own estimate of the amount of work done, might give some indication of the value of the work done by appellant. Thomasson testified that he paid another contractor $3,800 to finish the work. Mark Manderscheid testified that he completed the work himself for an estimated cost of $15,000. Lonnie Friend testified that she estimated that appellant had performed 30 percent of the job he said he would do, for which she paid $9,175. (Towana Krenek testified that the amount spent by the Kreneks to complete the job exceeded the amount paid to appellant, providing no evidence which might assist in calculating the value of the job done.) Even utilizing these figures, in conjunction with the amounts paid by complainants, to estimate the value of work done by appellant on the jobs, the total "offset" based on this evidence would still be less than $24,983.

Viewing the evidence in the light most favorable to the verdict, the record supports that appellant appropriated an amount of $20,000 or more but less than $100,000, and that appellant did not prove, by a preponderance of the evidence, that such value should be reduced by an amount greater than $24,983.

We overrule point of error six.

## Conclusion

We affirm the judgment of the trial court.

Justice BLAND, concurring.

JANE BLAND, Justice, concurring.

In his sixth issue, appellant contends that the evidence is legally insufficient to support his conviction for aggregate theft of over $20,000 because the undisputed evidence demonstrates that he partially performed the work described in each contract, and the value of his partial performance offsets the amounts paid to him by the complaining witnesses under the contracts. Thus, he contends, the State failed to show beyond a reasonable doubt that he stole an amount exceeding $20,000. In its analysis, the majority expressly refuses to apply an offset for work appellant performed in analyzing whether the evidence supports a finding that the amount appellant stole exceeds $20,000. I disagree with the majority's reasoning that appellant is not entitled to an offset for consideration he gave as partial performance on the construction contracts in determining the overall loss to the complainants, given that the record contains undisputed evidence to support it. I nevertheless concur in the judgment, because a reasonable jury could have found that appellant appropriated property in an amount that exceeds $20,000, even after deducting the value of work appellant performed under the contracts.

Appellant complains that the value of the property appropriated is not clear beyond a reasonable doubt. Like the majority, I interpret this issue as a challenge to the legal sufficiency of the evidence. *See Markey v. State*, 996 S.W.2d 226, 229 (Tex. App.-Houston [14th Dist.] 1999, no pet.). A review of the evidence in a light favorable to the jury's verdict reveals sufficient evidence to support the verdict, even considering an offset for work appellant performed. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Drichas v. State*, 175 S.W.3d 795, 798 (Tex.Crim.App.2005).

The evidence shows that appellant received a total of $44,983 from the four complainants. This amount, however, does not account for the work done by Riley for each complainant. Thus, we cannot accept this amount as the unassailable value of the stolen property, particularly here, where the amounts paid were admittedly pursuant to construction contracts, and the evidence shows that appellant performed at least some of his contractual obligations. *See Robalin v. State*, 224 S.W.3d 470, 475 (Tex.App.-Houston [1st Dist.] 2007, no pet.) ("The value of the property is reduced by any payments made by the defendant for the property."). Under Chapter 31 of the Texas Penal Code, which governs theft offenses, determination of the stolen property's "value" requires an offset for consideration provided. Section 31.08(d) states:

> If the actor proves by a preponderance of the evidence that he gave consideration for or had a legal interest in the property or service stolen, the amount of the consideration or the value of the interest so proven shall be deducted from the value of the property or service ascertained[.]

TEX. PENAL CODE ANN. § 31.08(d) (Vernon 2003). The work appellant performed at each worksite qualifies as an amount to "be deducted from the value of the property." *Id.* As appellant produced evidence of such offsets at trial, and the complaining witnesses each testified about the work appellant actually performed, we cannot ignore them in our sufficiency analysis. Neither can we use testimony about amounts the complaining witnesses paid to "cover" the breach of their agreements by hiring another contractor or completing the work themselves. These contract principles are not to determine a value stolen, but instead are expectancy remedies, intended to allow the non-breaching party the benefit of his bargain. The Texas criminal statute, however, has a restitution theory in mind: the amount (or fair market value) stolen, less any amount received. The amount needed to "cover" the work left under the contract can be evidence of the fair market value of the work left undone, but not of the amount stolen (which in this case was cash), or of the fair market value of the work partially performed.

Little authority exists interpreting Section 31.08(d), but its importance is particularly evident in construction cases. In *Stockman v. State*, for example, the appellant, a home builder, took money from the complainant with the understanding that the money would be used to buy appliances. *Stockman v. State*, 826 S.W.2d 627, 630–632 (Tex.App.-Dallas 1992, pet. ref'd). The appellant kept the money but never furnished the appliances. *Id.* at 634. The court acknowledged a "very decided conflict as to who is the actual owner of the money" because each party claimed that profits were earned by the appellant at a different point in the construction process. *Id.* at 635. The appellant had completed eighty-five to ninety percent of the construction. *Id.* at 636. The Dallas Court of Appeals ultimately did not reach the offset issue because it held that the evidence was insufficient to conclude that the defendant had an intent to deprive the complainant of the money, but the court observed that the value stolen had to be measured by something other than just the contract price if the evidence showed partial performance. *Id.* Just as in *Stockman*, appellant here received money from complainants with a promise that he would complete certain work, but he did not finish it. In these circumstances, before concluding that the evidence supports a finding that appellant stole an aggregate amount over $20,000, we must determine whether the evidence supports the jury's finding that appellant did not have a right to keep the money the complainants paid to him under the contracts based on work he had completed.

It is undisputed that appellant did not perform the entirety of the complainants' jobs, but he completed the Thomassons' frame and slab; the Kreneks' frame and part of the siding; the Manderscheids' frame and slab; and the Friends' frame. Appellant received payments for this work. But, he also received payments that were not associated with the completion of any work done—labeled in the contracts as "deposits" and "startup costs". Appellant received $1,600 as a deposit from the Thomassons; $3,298 as a deposit and $2,349 as startup costs from the Kreneks; $2,021 as a deposit and $6,952 as startup costs from the Manderscheids; as well as $2,525 as a deposit and $3,325 as startup costs from the Friends. Appellant did not refund these amounts, or any of the $44,983 paid to him, when he walked off the jobs. In reviewing the contracts, admitted into evidence as State exhibits, a rational jury could have concluded that the complainants received nothing in exchange for these amounts, and thus that appellant unlawfully appropriated them. Even ac-

counting for the evidence that the complainants received partial construction work in exchange for the over $44,000 they paid to appellant, the complainants paid an aggregate amount of $22,070 in deposits and startup costs. A reasonable jury could have concluded the complainants received no value in exchange for those amounts when the work went uncompleted—a conclusion that yields a total value in excess of $20,000 as required to sustain the conviction. Thus, even reflecting the consideration appellant provided, by deducting the money he received upon completion of particular stages of the contract from the total amount paid to him—as section 31.08(d) requires—the evidence, when viewed in a light favorable to the verdict, supports a finding that appellant stole an aggregate amount exceeding $20,000.

### Conclusion

Section 31.08(d) requires that the value of consideration given be deducted from the value of the property appropriated in determining the aggregate value of a theft. In analyzing the state of the evidence, the appellant thus is entitled to an offset for the value of the work he undisputedly performed on each job site in determining the overall value stolen. He is not criminally liable under a contractual benefit-of-the-bargain theory—the statute simply examines value taken less value given. Neither the contract amount nor contractual cover suffices to establish the aggregate value of the theft. The evidence presented here, however, permitted a rational jury to conclude that the value stolen, even after deducting the undisputed value of consideration given, exceeds $20,000. I therefore concur in the judgment of the court.