Opinion issued March 25, 2010.

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court of Appeals

For The

First District of Texas

————————————

NOS.

01-08-00529-CR



01-08-00530-CR

 



 

NEREO
PENA GARZA, Appellant

V.

THE
STATE OF TEXAS, Appellee



 



 

On Appeal from the 337th District Court 

Harris
County, Texas



Trial Court Case Nos. 1118779 & 1118777

 



 

 

MEMORANDUM
OPINION

A jury found appellant, Nereo Pena Garza, guilty
of first-degree aggregate theft (trial court cause no. 1118777 and appeal no.
01-08-00530-CR) and second- degree aggregate theft (trial court cause no. 1118779
and appeal no. 01-08-00529-CR), and assessed punishment at 7 years’ confinement
and a $5,000 fine for the first-degree offense and 6 years’ confinement and a
$10,000 fine for the second-degree offense. 
In four issues on appeal, appellant contends (1) the evidence is legally
and factually insufficient to support his convictions; (2) the trial court
erred during voir dire by explaining the concept of reasonable doubt in a way
that diminished the State’s burden of proof; and (3) the trial court erred in
denying appellant’s motion to suppress. 
We affirm.

BACKGROUND

In 2000, St. Agnes High School implemented a
program requiring each incoming student class to purchase a laptop for school
use. For the first three years of the program, students purchased laptops from
Hewlett Packard. Hewlett Packard provided a four-year manufacturer’s warranty
for each computer, which would last each student through graduation. Safeware Insurance
Company [“Safeware’] offered an optional supplemental insurance policy to cover
any repairs that were not covered by Hewlett Packard's manufacturer’s warranty.
St. Agnes hired appellant as a network and software technician and assigned him
to the “C.A.V.E.,”[1] the school’s computer repair center.  During the summer of 2003, a computer virus
attack infected most of the school’s laptop computers. Appellant encouraged the
school to hire Reza Haghigi Ahmadi’s[2]
company, Intelligent Interface [“I.I.”], to repair the computers. Ahmadi sent
I.I. technicians to St. Agnes, and the virus was eradicated after approximately
three weeks of work. Ahmadi did not charge the school for this repair work. Pleased
with Ahmadi’s work on the virus, St. Agnes then hired I.I. as its HP warranty
repair provider, and I.I. technicians began to work in the C.A.V.E. with
appellant full-time.  Appellant was not a
certified Hewlett Packard warranty provider and was not authorized to diagnose
problems for the I.I. technicians. 
Nevertheless, I.I.’s employee in the C.A.V.E., Daniel Pham, testified
that he was told to “just listen and do whatever [appellant] told him to do.”

In 2005, St. Agnes hired Jason Hyams as its technology
director. Hyams soon became concerned with Garza’s activities in the C.A.V.E.  He questioned the presence of a large
inventory of replacement parts for which there were no invoices or
documentation, and also discovered that Safeware checks made payable to St.
Agnes were habitually deposited into bank accounts managed by I.I. and a business
account maintained in appellant’s wife’s name. Additionally, Hyams found lists
of laptop serial numbers, part numbers, and part descriptions organized
sequentially by date. On further investigation, Hyams discovered that the
serial numbers on the notepads were in alphabetical order by the students’ last
names.  Hyams concluded that appellant
was using the serial numbers to order replacement parts for the students even
though repairs were not needed.[3]  Hyams found several instances where parts
were ordered and received for specific laptops without corresponding service
tickets or student complaints matching the part orders. St. Agnes questioned Ahmadi
and appellant about the alleged rotation scheme and the replacement part
inventory. At that time, appellant admitted making unnecessary part
replacements, but told the school that they maintained the parts inventory so
that repairs could be completed more quickly. St. Agnes terminated appellant
and later replaced I.I. as its warranty repair provider. St. Agnes also
notified HP, Safeware, and the police of its concerns. Ahmadi and appellant
were subsequently arrested and indicted for theft. The two men were tried
jointly, and the jury convicted appellant of theft against both Hewlett Packard
and Safeware.

SUFFICIENCY OF THE EVIDENCE

Standard
of Review

We review the legal sufficiency of the evidence by
considering all of the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Williams v. State,
235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We “may not re-evaluate the weight
and credibility of the record evidence and thereby substitute our judgment for
that of the fact-finder.” Id. We give  testimony, to weigh evidence, and to draw
reasonable inferences from the facts. Id. Our duty is to “ensure that
the evidence presented actually supports a conclusion that the defendant
committed the crime that was charged.” Id.



We begin our
factual sufficiency review with the assumption
that the evidence is legally sufficient. Laster v. State, 275 S.W.3d
512, 518 (Tex. Crim. App. 2009).  Evidence
that is legally sufficient, however, can be deemed factually insufficient if
(1) the evidence supporting the conviction is “too weak” to support the fact-finder’s
verdict or (2) considering conflicting evidence, the fact-finder’s verdict is
“against the great weight and preponderance of the evidence.” Id. We
consider all of the evidence in a neutral light, as opposed to in a light most
favorable to the verdict. Id. We recognize that the fact-finder is in
the best position to evaluate the credibility of witnesses, and we afford due
deference to the fact-finder’s determinations. Marshall v. State, 210
S.W.3d 618, 625 (Tex. Crim. App. 2006). We may only find the evidence factually
insufficient when necessary to “prevent manifest injustice.” Laster, 275
S.W.3d at 518. In such case, we must explain why the evidence is too weak to
support the verdict or why the conflicting evidence greatly weighs against the
verdict.  Id.

Applicable
Law

“A
person commits an offense if he unlawfully appropriates property with intent to
deprive the owner of property.” Tex. Penal
Code Ann. § 31.03(a) (Vernon Supp. 2009). “Appropriation of property is
unlawful if it is without the owner’s effective consent.” Tex. Penal Code Ann. § 31.03(b)(1)
(Vernon Supp. 2009).

Appellant was charged with aggregate
theft in the first degree in the
Hewlett Packard case and aggregate theft in the second degree in the Safeware
Insurance case.  A theft is a theft in
the first degree if the value of the property stolen is $200,000 or more. Tex. Penal Code Ann. § 31.03(e)(7)
(Vernon Supp. 2009). A theft is a theft in the second degree if the value of
the property stolen is $100,000 or more but less than $200,000. Tex. Penal Code Ann. § 31.03(e)(6)(Vernon
Supp. 2009).

The
Hewlett Packard case

          In
issue one of the Hewlett Packard case, appellant contends the evidence is
legally insufficient to support the verdict. 
Specifically, appellant claims that the evidence is legally insufficient
because (1) Dennis Leahy was not the legal owner of the stolen funds and (2)
“insufficient evidence was presented to distinguish between money obtained by
invalid warranty claims and funds received through honest work.”

Evidence of Ownership

          The
indictment alleged that appellant unlawfully appropriated money owned by Dennis
Leahy.  Appellant argues that there is
legally insufficient evidence to show that Leahy owned the stolen money.

The Texas Penal Code’s definition of “owner” includes
a person who has “a greater right of possession of the property than the
actor.” Tex. Penal Code Ann. §
1.07(a)(35)(A) (Vernon Supp. 2009). “Possession” is defined as “actual care,
custody, control, or management.” Tex.
Penal Code Ann. § 1.07(a)(39) (Vernon Supp.2009).  An allegation of ownership may be alleged in
either the actual owner or a special owner.
Tex. Code Crim. Proc. Ann. art.
21.08 (Vernon 1989); Freeman v. State,
707 S.W.2d 597, 603 (Tex. Crim. App. 1986). “A ‘special owner’ is an individual who is in custody or control of
property belonging to another person.” Harrell
v. State, 852 S.W.2d 521, 523 (Tex. Crim. App. 1993). When a corporation is
the owner of the property that has been stolen, it is the preferable pleading
practice to allege special ownership in a natural person acting for the
corporation. Simpson v. State, 648
S.W.2d 1, 2 (Tex. Crim. App. 1983); Harris
v. State, 846 S.W.2d 960, 962 (Tex. App.—Houston [1st Dist.] 1993, pet. ref’d).  A person may testify as the “special
owner” of property if it is shown that he has care,
custody, or control of the property by virtue of his employment relationship
with the corporation that owns the property. See id. at 962.

Here, Leahy testified that he was the lead global
investigator for Hewlett Packard.  At the
time of trial in June 2008, Leahy had been working for Hewlett Packard for over
three years.  Leahy’s duties included the
investigation of incidents involving warranty fraud.  Appellant does not dispute that these duties
would be sufficient to qualify Leahy as a special owner. 

Nevertheless, appellant argues that Leahy cannot
be a “special owner” of the money because he was not employed by Hewlett
Packard during the entire time the alleged thefts occurred.  Specifically, appellant points out that the
alleged thefts occurred between June 2, 2003, and August 30, 2005, and that
Leahy was not employed by Hewlett Packard until sometime in early 2005.  It is true that “the key to answering the
question of which person has the greater right to possession of the property is
who, at the time of the commission of the offense, had the greater right to
possession of the property.  Freeman, 707 S.W.2d at 604.

However, the State points out that this case was
charged as an aggregate theft.  “When
amounts are obtained in violation of this chapter pursuant to one scheme or
continuing course of conduct, whether from the same or several sources, the
conduct may be considered as one offense and the amounts aggregated in
determining the grade of the offense.”  Tex. Penal Code Ann. § 31.09 (Vernon 2005). 
Section 31.09 operates to create one offense.  Kellar
v. State, 108 S.W.3d 311, 312—13 (Tex. Crim. App. 2003); Dickens v. State, 981 S.W.2d 186, 188
(Tex. Crim. App. 1998) (“Aggregate theft is the sum of all its parts.  A part is a completed theft whose elements
have all been proven.”)  In Tita v. State, 267 S.W.3d 33, 35 n.1
(Tex. Crim. App. 2008), the court noted that in aggregate theft cases, the
statute of limitations does not begin to until the date of the commission of
the final incident of theft and therefore the entire theft is deemed to occur
on the date of the most recent theft.

Applying this
reasoning, we conclude that, because the State does not have to prove each
individual theft in an aggregate theft case, it likewise is not required to
prove that the special owner was an employee of the corporation during the time
of each individual theft.  See State v. Weaver, 982 S.W.2d 892, 893—95
(Tex. Crim. App. 1998) (holding venue proper in Harris County for prosecution
of aggregate theft arising out of a single scheme, even though offenses against
some complainants took place outside Harris County because alleged
out-of-county offenses arise from same scheme or continuing course of conduct
as Harris County offenses).  The evidence
here showed that Leahy was a Hewlett Packard employee with a greater right of
control over the corporation’s money than appellant during commission of the
aggregate offense.  As such, the
evidence is legally sufficient to show that Leahy was the owner.

Amount
Stolen

Appellant was charged with theft of over $200,000.00
from Hewlett Packard, through its special owner, Leahy.  In issues one and two, appellant argues that
“by failing to present any evidence separating what [the State] conceded was
legitimate work from that which was fraud,” the State presented legally and
factually insufficient evidence “to distinguish between money obtained by
invalid warranty claims and funds received through honest work.”  Essentially, appellant argues that he
“partially performed,” and that, as a result, the State was required to prove
an offset for the amount of valid work done on the computers.

Even if we were to assume that appellant is entitled
to an offset for the legitimate work performed on the computers, it would be
appellant’s burden to produce evidence of the amount of such an offset.  See
Riley v. State, 2009 WL 3050878, *6 (Tex. App.—Houston [1st Dist.] Sept. 18, 2009, pet.
filed).  Section 31.08(d) of the Penal
Code addresses how property is valued for purposes of the theft statute and
provides:

If the actor proves
by a preponderance of the evidence that he gave consideration for or had a
legal interest in the property or service stolen, the amount of the
consideration or the value of the interest so proven shall be deducted from the
value of the property or service ascertained . . . to determine value for
purposes of this chapter.

Tex. Penal Code Ann. § 31.08(d) (Vernon 2003) (emphasis
added).  

Appellant’s claim is that he had a legal interest
in a portion of the funds taken from Hewlett Packard because some of the
warranty repair work was genuine. 
However, under § 31.08(d), such a claim is an affirmative defense
placing the burden of proving appellant’s legal interest on appellant, not the
State.  The State presented evidence that
Hewlett Packard paid out $761,552.50 for the fraudulent warranty work, and
appellant presented no evidence to support his claim of entitlement to an
offset on this amount.

Viewing the evidence in the light most favorable
to the verdict, there was legally sufficient circumstantial evidence of the
amount stolen. Williams, 235
S.W.3d at 750 (legal sufficiency). Similarly, after viewing all the evidence in
a neutral light, we also hold that the evidence of the amount stolen was not
factually insufficient. Laster,
275 S.W.3d at 518 (factual sufficiency). The jury was free to determine
the credibility of the witnesses and choose whose testimony it believed. Id. Accordingly, we overrule issues one
and two in the Hewlett Packard case. 

The Safeware
Insurance case

          Appellant
also argues that the evidence is legally and factually insufficient to show
that he had the requisite criminal intent to deprive Safeware Insurance of its
money.  Specifically, he argues that “it
was understood through verbal agreement by both parties that insurance claims
would be processed through [appellant] and it was expected that [appellant]
would receive the checks and then use the funds for repair and replacement of
the laptops.”  Essentially, appellant
argues that he received the funds voluntarily, and that while he may have
failed to follow procedure by depositing the insurance checks in his personal
accounts, this is case is nothing more than a contract dispute regarding the
amount of funds owed under the insurance agreements.

A person commits theft
if he unlawfully appropriates property with intent to deprive the owner of
property. See Tex. Penal Code
Ann. § 31.03(a) (Vernon Supp. 2009). Appropriation of property is unlawful
if it is without the owner’s effective consent. See Tex. Penal Code Ann. § 31.03(b)(1)
(Vernon Supp. 2009). Consent is not effective if it is induced by
deception.  See Tex. Penal Code Ann. § 31.01(3)(A)
(Vernon Supp. 2009).

Citing Phillips v. State, 640 S.W.2d 293, 294
(Tex. Crim. App. 1982) and Jacobs v.
State, 230 S.W.3d 225, 230 (Tex. App.—Houston [14th Dist.] 2006, no pet.), appellant
argues that a failure to perform a contract is not evidence that a defendant
deceived the complainant into paying him money. 
However, in each of those cases, the only evidence of “theft” was a
failure to perform as contracted.  Here,
there is substantially more evidence of deception than a failure to perform
under a contract.  See Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004)
(holding criminal intent may be inferred from defendant’s conduct and
surrounding circumstances).

The State presented
evidence that every claim submitted to Safeware for payment listed a “drop” as
the cause of damage.  There was also
evidence that Hewlett Packard and Safeware often paid for the same repairs to
the same computer.  The State presented
evidence that appellant deposited checks from Safeware, which were made payable
to St. Agnes, into his wife’s business account and that he gave other of the
checks to Ahmadi.  Appellant then used
the money in from his wife’s business account to pay his personal bills.  While appellant characterizes this as a
failure to follow “procedure,” the jury could have considered this as evidence
of intent to deceive.  See Bogia v. State, No. 01-02-00950-CR
at *3-4, 2004 WL 253263 (Tex. App.—Houston [1st Dist.] February 12, 2004, pet.
ref’d) (not designated for publication) (holding that violating company policy
some evidence of intent to deceive).  

There was also evidence
that the students’ explanations of how their computers were damaged did not
match the repairs done on the computers or the claims sent to Safeware.  For example, one students came to the
C.A.V.E. and complained that her computer would not charge.  The insurance claim shows that the system
board, the LCD screen, and the plastic bottom of the computer were
replaced.  The insurance claim showed
that the computer was “dropped.”  Another
student complained that she could not “connect to the internet,” but the
insurance claim showed that the student hit the computer on the door and broke
the LCD screen, which was replaced. 
Daniel Pham, I.I.’s worker who was assigned to work in the C.A.V.E. with
appellant, testified that he was instructed to “do whatever [appellant] told
him to do,” and that he felt like he was often instructed to replace good parts
with good parts. 

Finally, the jury
heard evidence of appellant’s elaborate scheme to bill Hewlett Packard for
unnecessary warranty work by using the rotating list of serial numbers from the
tablets.  The jury could have concluded
that appellant’s actions in relation to Safeware were likewise “merely a ruse
to accomplish theft by deception.”  King v. State, 17 S.W.3d 7, 15 (Tex.
App.—Houston [14th Dist.] 2000, pet. ref’d).

Viewing the evidence
in the light most favorable to the verdict, there was legally sufficient
circumstantial evidence of appellant’s intent to commit theft. Williams, 235
S.W.3d at 750 (legal sufficiency).   Similarly, after viewing all the evidence in
a neutral light, we also hold that the evidence of appellant’s intent to commit
theft was not factually insufficient. Laster, 275 S.W.3d at 518 (factual
sufficiency). The jury was free to determine the credibility of the witnesses
and choose whose testimony it believed. Id.
Accordingly, we overrule issues one and two in the Safeware case.

 

VOIR DIRE

In his third issue on appeal, appellant argues that
the trial court erred in voir dire when it explained “reasonable doubt” as
follows:

[Trial Court]:  I
had mentioned to you several times that that piece of paper of the elements of
the offense have to be proven to you, whatever is alleged in that piece of
paper beyond a reasonable doubt.  Here’s
the deal on reasonable doubt.  The Court
is not going to—not
only here but anywhere else in this State—is not going to define for you what a reasonable
doubt is.  The Court of Criminal Appeals
has told us that is up to each individual
juror to decide, this juror gets to decide in his or her own mind so that this
juror gets to decide, this juror gets to decide, this juror gets to decide
through all 12 of you.  There’s not
going to be a light, no buzzer, no whistle, nothing that goes off to say, okay,
the State has met its burden.  It’s up to
you to decide when you are convinced beyond a reasonable doubt as to each
element of the offense.  But here’s what
the law does tell you.  The law tells you
the State does not have to prove its case beyond all doubt.  What would it take to convince you of
anything beyond all doubt?

[Venireperson]: 
You saw it yourself.

[Trial Court]:  And
what are you called if you saw it yourself?

[Venireperson]: 
Eyewitness.

[Trial Court]: 
Yeah, you’re a witness. You’ll be waiting in the hallway for us to get
this jury picked.  And that’s why the
burden is beyond a reasonable doubt. 
Nothing unique to this case, this court, this State.  It’s the same everywhere.  You have to be convinced beyond a reasonable
doubt as to each element of the offense. 
It’s not anything in the world, but something that is alleged in here
you have to be convinced of beyond a reasonable doubt before you can find a
person guilty.  If you are not convinced
beyond a reasonable doubt, what is your verdict?

[Venireperson]: 
Not guilty.

Citing Wansing
v. Hargett, a case from the United States 10th Circuit Court of Appeals,
appellant argues that the trial court’s voir dire comments on reasonable doubt
diminished the State’s burden of proof because it suggested that there was “an
extraordinarily broad range of possible meanings [of reasonable doubt] including
some which are plainly unconstitutional[.]” 
341 F.3d 1207, 1214 (10th Cir. 2003).

The State responds that error, if any, was waived
because appellant did not object to the trial court’s comments.  Appellant, however, contends that the comment
was structural error, and did not require objection.

As a general rule, trial counsel must object to
preserve error, even if it is “incurable” or “constitutional.” Cockrell
v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).  However, in Blue v.
State, 41 S.W.3d 129 (Tex. Crim. App. 2000), a plurality of the Court of
Criminal Appeals held that a trial court’s comments during voir
dire, “which tainted [the defendant’s] presumption of
innocence in front of the venire, were fundamental error of constitutional
dimension and required no objection.” Id. at 132.  In Blue, the
trial court apologized to the venire for its long wait, explained that the
delay was because the defendant was indecisive on whether to accept a plea
bargain, and expressed its preference that the defendant plead guilty. Id.
at 130.  A plurality opinion is not
binding precedent and we are not obligated to follow it.  See Murchison v. State, 93 S.W.3d 239,
262 (Tex. App.-—Houston
[14th Dist.] 2002, pet. ref’d).  Even if Blue were binding, it is distinguishable.  In Blue,
the trial judge expressed his personal view regarding appellant’s guilt or
decision to go to trial.  No such
tainting of the presumption of innocence occurred in this case. Therefore, by
failing to object to the trial court’s comments on reasonable doubt, appellant
waived error.  See Tex. R. App. P. 33.1; see also Brumit v. State, 206 S.W.3d 639, 644-45 (Tex. Crim. App. 2006)
(staring that court did not need to decide whether objection was required to
preserve alleged error regarding comments of trial judge where record did not
reflect bias or partiality of trial court); Jasper
v. State, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001) (holding that trial
judge’s comments “aimed at clearing up a point of confusion” did not “[rise] to
such a level as to bear on the presumption of innocence”).

We overrule issue three.

MOTION TO SUPPRESS

At trial, appellant brought a motion to suppress
evidence obtained as a result of videotaped questioning by the police while he
was in custody.  Appellant contends that
the videotape should have been suppressed because it was taken in violation of
his rights under Miranda v. Arizona,
384 U.S. 436, 86 S. Ct. 1602 (1966) and Tex.
Code  Crim. Proc. Ann. art. 38.22,
§ 3(a) (Vernon 2005).  Specifically,
appellant contends that (1) he never expressly waived his Miranda and statutory rights and (2) his statement was involuntary
because the police used “trickery” by telling him that a co-defendant had
implicated him.

Standard
of Review 

We review the trial court’s ruling on a motion to
suppress evidence for abuse of discretion, using a bifurcated standard. See
Guzman v. State, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). We give “almost
total deference” to the trial court’s findings of historical fact that are
supported by the record and to mixed questions of law and fact that turn on an
evaluation of credibility and demeanor. Id. at 89. We review de novo the
trial court’s determination of the law and its application of law to facts that
do not turn upon an evaluation of credibility and demeanor. Id. When the
trial court has not made a finding on a relevant fact, we imply the finding
that supports the trial court’s ruling, so long as it finds some support in the
record. State v. Kelly, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006); see
Moran v. State, 213 S.W.3d 917, 922 (Tex. Crim. App. 2007). We will uphold
the trial court’s ruling if it is reasonably supported by the record and is
correct under any theory of law applicable to the case. State v. Dixon,
206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

 

 

Waiver of Miranda and statutory rights

An oral
statement of an accused made as a result of custodial interrogation is admissible
against the accused in a criminal proceeding if: (1) an electronic recording,
which includes a videotape, is made of the statement; (2) before the statement,
but during the recording, the accused is given the warnings required by article
38.22, section 2(a) of the Code of Criminal Procedure; and (3) the accused
knowingly, intelligently, and voluntarily waives the rights conveyed by the
warning. Tex. Code  Crim. Proc. Ann. art. 38.22, § 3(a)
(Vernon 2005).  

The
videotape in this case and Detective Nolan’s testimony establish that Nolan
properly advised appellant of his Article 38.22, section 2(a) rights. Before
questioning appellant, Nolan stated, “Before you are asked any questions, it is
my duty to advise you of your rights and to warn you of the consequences of
waiving these rights.” After reciting each right to appellant, Nolan stopped to
engage appellant and ask if he understood the particular right. Appellant
responded “yes” in every instance. Nolan then asked appellant, “Having received
these rights and acknowledging that you understand them, do you want to answer
any of my questions.”  Appellant responded,
“Sure. Yeah. No problem.” Appellant then proceeded to answer Nolan’s questions.
Appellant never attempted to stop the questioning, never remained silent when
faced with a question, and never asked to speak with a lawyer. 

Appellant contends that because he did not ever
expressly state that he waived his rights, “a presumption should exist that he
in fact invoked his rights.”
Article 38.22 does not require an express verbal statement from the accused
that he waives his rights before giving a statement.  Rocha v. State, 16 S.W.3d 1, 12 (Tex. Crim.
App. 2000).  The reviewing court may
determine that the accused impliedly waived his rights and voluntarily
confessed by examining the totality of the circumstances demonstrated by the
record. See Barefield v. State, 784 S.W.2d 38, 41 (Tex. Crim. App.
1989).



Any waiver of Miranda rights on behalf of
an accused must be made knowingly, intelligently, and voluntarily. See
Miranda, 384 U.S. at 475, 86 S. Ct. at 1628. Whether an accused effectively
waives his rights has two distinct inquiries: first, the relinquishment of the
right must have been voluntary in the sense that it was the product of a free
and deliberate choice rather than intimidation, coercion, or deception. Moran
v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141 (1986).  Second, the waiver must have been made with a
full awareness of both the nature of the right being abandoned and the
consequences of the decision to abandon it.  Id.  As under Texas law, federal law does not
require an express waiver; waiver may be inferred from the actions and words of
the person interrogated.  North
Carolina v. Butler, 441 U.S. 369, 373, 99 S. Ct. 1755, 1758 (1979); Rocha
v. State, 16 S.W.3d 1, 12 (Tex. Crim. App. 2000). We consider the totality
of the circumstances when determining whether an accused has waived his Miranda
rights. Fare v. Michael C., 422 U.S. 707, 725, 99 S. Ct. 2560, 2571-72
(1979). Simply making an inculpatory statement cannot alone indicate a waiver
of the right to remain silent, but a statement of “desire to talk” to police,
accompanied by an inculpatory statement can show the waiver of the right to
remain silent. See Butler, 441 U.S. at 372-73, 99 S. Ct. at 1756-57; McDonald
v. Lucas, 677 F.2d 518, 521-22 (5th Cir.1982).

First, nothing in the record indicates that
appellant was coerced, intimidated, or deceived into giving a statement.
Detective Nolan testified that he made no promises or threats to appellant. None
of the officers in the interrogation room were armed.  Appellant, in fact, does not argue that he
was coerced, threatened, or deceived into waiving his rights.  While appellant argues that the officers used
deceptive techniques when questioning him, he does not argue, and there is
nothing in the record to suggest, that these interrogation techniques deceived
or induced appellant into waiving his rights. 
Indeed, appellant had already indicated his willingness to speak to the
police before Nolan erroneously led appellant to believe that Ahmadi was “blaming
the whole scam on him.”



Second, the recorded confession clearly shows that
Detective Nolan read appellant his Miranda and statutory warnings, and,
immediately after being told that he had the right to remain silent and that
anything he said could be used against him in court, appellant answered affirmatively
when asked whether he wanted to “answer any of [Nolan’s] questions.”  From this sequence of events, the trial court
could have reasonably concluded that appellant was aware of his rights, the
consequences of waiving those rights, and that appellant did, in fact, waive
his rights by choosing to continue to speak with police after being warned that
he did not have to do so.

Finally,
there was no issue of intoxication or any indication that appellant did not
understand what was occurring. He appears coherent and fully able to understand
the questions. His responses are articulate. The interrogation lasted a little
over an hour.  Appellant was given water
when he was thirsty.  Nolan testified
that appellant appeared to understand the warnings that were read to him.  Appellant never indicated that he wished to
quit talking or to have an attorney present.

For
these reasons demonstrated by the record before us, we cannot say that the
trial court erred by determining, from the totality of the circumstances, that
appellant impliedly waived the rights afforded to him by Miranda or Article 38.22, section 2(a).

Involuntariness due to deceptive interrogation tactics

Appellant
also argues that his confession was involuntary because the police lied to him
and told him that Ahmadi was “blaming the whole scam on him.”  However, in arguing his motion to suppress,
appellant never argued that his statement was involuntary because police lied
to him.  Instead, defense counsel argued
only that appellant was (1) never affirmatively asked whether he waived his
rights, and (2) unaware that he was being videotaped.  Because appellant’s issue regarding deceptive
interrogation tactics does not comport with the objection at trial, it is
waived. 
See Tex. R. App. P.
33.1 (to preserve complaint for appellate review, complaint must be presented
to and ruled upon by trial court); Gallo
v. State, 239 S.W.3d 757, 763 (Tex. Crim. App. 2007) (holding appellant’s
general trial objection, in comparison with those lodged on appeal, were not
sufficiently specific to preserve error); Heidelberg
v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) (holding that
complaint made on appeal must comport with complaint made
in trial court or error is forfeited).   Furthermore, even if we were to consider
appellant’s argument that the failure to inform him that he was being
videotaped is a deceptive tactic that rendered his confession involuntary, he
cites no argument or authority requiring such a disclosure by police before an
interrogation.

We
overrule point of error four.

 

 

 

 

CONCLUSION

We affirm the judgment of the trial court.

 

 

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Alcala and Higley.

Do not publish. 
 Tex. R. App. P. 47.2(b).











[1]  C.A.V.E. is an acronym for Computer Audio
Visual Equipment.







[2]        Ahmadi and appellant were tried
together in the same trial.  Ahmadi was
convicted, and his conviction was affirmed by the Fourteenth Court of
Appeals.  See
Ahmadi v. State, 2010 WL 307909 (Tex. App—Houston [14th
Dist.] January 28, 2010, no pet. h.) (not designated for publication).





[3]    There was evidence that Ahmadi was rated a
“premier” certified warranty representative for Hewlett Packard, which meant
that he was reimbursed for labor at the highest rate available.  To maintain such “premier” status, there could
not be more than one part claim per computer during a 30 day period.  Thus, the rotating tablet system assured that
Ahmadi would maintain his “premier” status by attributing each part ordered to
a different computer, even if that computer did not require a repair.  The fact that there was an “inventory” in the
C.A.V.E. suggests that parts were ordered and Ahmadi was paid for repairs, even
though the parts were never actually put in a computer.