Affirmed and Memorandum Opinion filed June 3, 2010.

 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00372-CR



 

Robyn M. Reed, Appellant

V.

The State of Texas, Appellee

 



On Appeal from the 338th
District Court

Harris County, Texas

Trial Court Cause No. 1164028



 

MEMORANDUM  OPINION

 

Appellant Robyn M. Reed challenges her theft conviction. 
After a jury trial, the jury found appellant guilty of theft of welfare
benefits valued at more than $1,500 but less than $20,000.  The trial court
assessed punishment at confinement for one year probated for one year of
community supervision.  Appellant contends the evidence is legally and
factually insufficient to support her conviction.  We affirm.

Background

            Appellant
submitted an application for welfare benefits on July 12, 2006, in which she
stated that she was unemployed and had no source of income.  Appellant
initially indicated on her application that she was employed by Pappadeaux
Restaurant, but she marked through this entry and wrote “quit” next to it.  

Jose Vazquez, a Texas Department of Health and Human
Services (“TDHHS”) employee, contacted appellant by telephone on September 5,
2006 regarding her application.  Appellant told Vazquez that she currently was unemployed
and had no source of income.  She informed Vazquez that she formerly was employed
by Pappadeaux Restaurant, but had quit her job in March 2006.  Appellant’s
application was approved, and she began receiving food stamp and Medicaid
benefits.  Appellant filed an application for recertification of her
eligibility to receive welfare benefits on December 14, 2006.  She stated on
her December 14, 2006 application that she was employed by Pappadeaux
Restaurant.        

            In 2007,
appellant’s case file was “flagged” for investigation by the Texas Workforce Commission
(“TWC”); Robert Rodgers, a TDHHS investigator, was assigned to investigate
appellant’s case file.  Rodgers discovered that appellant was employed by
Pappadeaux Restaurant from April 28, 2005 to March 9, 2006 and again from June
6, 2006 until July 17, 2007.  Rodgers calculated the benefits that appellant
would have been entitled to receive from September 2006 through February 2007
had she reported her employment, and determined that appellant had received an
over-issuance of $1,806.13 in welfare benefits during that period.

            Appellant was
indicted for the offense of theft of welfare benefits valued at more than
$1,500 but less than $20,000 “pursuant to one scheme and continuing course of
conduct.”  After a jury trial, the jury found appellant guilty as charged in
the indictment.  The trial court signed its judgment on April 20, 2009, and
assessed punishment at confinement for one year probated for one year of
community supervision.  Appellant appeals from the trial court’s judgment.

Analysis

            Appellant
presents three issues on appeal.  First, appellant contends that the evidence
is legally insufficient to establish that she received an over-issuance of more
than $1,500 in welfare benefits.  In her second and third issues, appellant
contends that the evidence is legally and factually insufficient to establish
that appellant (1) intended to deprive the State of the over-issued welfare
benefits; and (2) deceived the State to obtain the over-issued welfare
benefits.  We first will address appellant’s second and third issues.  

In reviewing legal sufficiency of the evidence, an
appellate court examines all of the evidence in the light most favorable to the
verdict to determine whether any rational factfinder could have found proof of
the essential elements of the offense beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Rollerson v. State, 227 S.W.3d
718, 724 (Tex. Crim. App. 2007).  The court does not sit as a thirteenth juror
and may not re-evaluate the weight and credibility of the record evidence or
substitute its judgment for that of the factfinder.  Dewberry v. State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999).

Reconciliation of conflicts in the evidence is within
the exclusive province of the factfinder.  See Mosley v. State, 983
S.W.2d 249, 254 (Tex. Crim. App. 1998).  The appellate court’s duty is not to
re-weigh the evidence, but to serve as a final due process safeguard ensuring
only the rationality of the factfinder.  See Williams v. State, 937
S.W.2d 479, 483 (Tex. Crim. App. 1996).  An appellate court faced with a record
that supports conflicting inferences must presume — even if not obvious from
the record — that the factfinder resolved any such conflicts in favor of the
verdict and must defer to that resolution.  Jackson, 443 U.S. at 326; Evans
v. State, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006).

In reviewing factual sufficiency of the evidence, an
appellate court must determine whether (1) the evidence introduced to support
the verdict is “so weak” that the factfinder’s verdict seems “clearly wrong and
manifestly unjust,” or (2) the factfinder’s verdict is nevertheless against the
great weight and preponderance of the evidence.  Watson v. State, 204
S.W.3d 404, 414-15 (Tex. Crim. App. 2008).  In a factual sufficiency review,
the court views all of the evidence in a neutral light.  Johnson v. State,
23 S.W.3d 1, 11 (Tex. Crim. App. 2000) (en banc).  If the court finds the
evidence to be factually insufficient, the court must remand the case for a new
trial.  Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996).

In order to declare that an evidentiary conflict
justifies a new trial, an appellate court must rely on some objective basis in
the record demonstrating that the great weight and preponderance of the
evidence contradicts the jury’s verdict.  See Lancon v. State, 253
S.W.3d 699, 706-07 (Tex. Crim. App. 2008).  An appellate court should not intrude
upon the factfinder’s role as the sole judge of the weight and credibility of
witness testimony.  Vasquez v. State, 67 S.W.3d 229, 236 (Tex. Crim.
App. 2002).  The factfinder may choose to believe or disbelieve any portion of
the testimony presented at trial.  Bargas v. State, 252 S.W.3d 876, 887
(Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing Sharp v. State,
707 S.W.2d 611, 614 (Tex. Crim. App. 1986) (en banc)).  Due deference must be
given to the factfinder’s determinations concerning the weight and credibility
of the evidence and reversal of those determinations is appropriate only to
prevent the occurrence of a manifest injustice.  Martinez v. State, 129
S.W.3d 101, 106 (Tex. Crim. App. 2004).

            Appellant was
charged with an aggregated theft.  An individual commits the offense of theft
if the individual unlawfully appropriates property with the intent to deprive
the owner of that property.  Tex. Penal Code Ann. § 31.03(a) (Vernon
2003).  “When amounts are obtained in violation of [Texas Penal Code Chapter
31] pursuant to one scheme or continuing course of
conduct, whether from the same or several sources, the conduct may be
considered as one offense and the amounts aggregated in determining the grade
of the offense.”  Tex. Penal Code Ann. § 31.09 (Vernon 2005).  Section 31.09
operates to create one offense.  Kellar v. State, 108 S.W.3d 311, 312-13
(Tex. Crim. App. 2003) (en banc); Dickens v. State, 981 S.W.2d 186, 188
(Tex. Crim. App. 1998) (en banc).   “Aggregated theft is
the sum of all of its parts.  A part is a completed theft
whose elements have all been proven.  The amount obtained in each part may be
aggregated in determining the grade of the one aggregated offense.”  Dickens,
981 S.W.2d at 188.        

An individual acts with intent when it is the
individual’s conscious objective or desire to engage in the conduct or cause
the result.  Tex. Penal Code Ann. § 6.03(a) (Vernon 2003).  Intent is a
question of fact for the jury.  Reed v. State, 158 S.W.3d 44, 48 (Tex. App.—Houston
[14th Dist.] 2005, pet. ref’d).  Appropriation of property is unlawful if it is
done without the owner’s effective consent.  Tex. Penal Code Ann. § 31.03(b)(1). 
Consent is not effective if it is induced by deception or coercion.  Id.
§ 31.01(3)(A) (Vernon 2003).  “Deception” is defined as “creating or
confirming by words or conduct a false impression of law or fact that is likely
to affect the judgment of another in the transaction, and that the actor does
not believe to be true” or “failing to correct a false impression of law or
fact that is likely to affect the judgment of another in the transaction, that
the actor previously created or confirmed by words or conduct, and that the
actor does not now believe to be true.”  Id. § 31.01(1)(A)-(B). 
Deception and intent may be inferred from the circumstances.  See Smith v.
State, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998) (en banc); Christensen
v. State, 240 S.W.3d 25, 32 (Tex. App.—Houston [1st Dist.] 2007, pet. ref’d)
(op. on reh’g) (“A jury may infer intent from any facts that tend to prove its
existence, such as the acts, words, and conduct of the defendant.”).   

In her second and third issues, appellant argues that
the evidence is legally and factually insufficient to support a finding that
appellant deceived the State and had the intent to deprive the State of welfare
benefits “at any point after December 19, 2006.” Appellant argues that she cannot
be held “criminally liable for any erroneously paid [welfare] benefits she
received after December 19, 2006” because she “reported that she was employed
on her December 19, 2006 Application.”  Therefore, according to appellant, the
total amount of welfare benefits she allegedly misappropriated was only $1,241.34.[1] 
Appellant also argues that the State should have known that her representation
that she received no income was inaccurate due to discrepancies in her July 12,
2006 application.  Lastly, appellant argues that Vazquez failed to properly
verify that he was talking to appellant during the September 5, 2006 telephone
interview.  

Appellant was employed by Pappadeaux Restaurant from
June 6, 2006 until July 17, 2007.    Appellant submitted an application for
welfare benefits to TDHHS on July 12, 2006.  On her application, appellant
initially indicated that she was employed by Pappadeaux Restaurant, but she
then marked through this entry and wrote “quit” next to it.  Appellant’s
application was reviewed by Vazquez.  Vazquez contacted appellant by telephone
on September 5, 2006 to interview her regarding her application.  Vazquez
testified that he verified he was talking to appellant “based on the questions
[he] asked her about the children, Social Security, ID, people that she live[s]
with, [and] work history.”  During the interview, Vazquez asked appellant if
she received any income.  Appellant responded “no.”  Appellant was approved to
receive and actually received welfare benefits for a six-month period beginning
in September 2006 and ending in February 2007 based on her representation that
she had no income.  

Viewing this evidence in the light most favorable to
the verdict, the jury could have found beyond a reasonable doubt that appellant
intended to deprive the State of the over-issued welfare benefits between
September 2006 and February 2007.  See Jackson, 443 U.S. at 326; Evans,
202 S.W.3d at 161.  The jury also could have found beyond a reasonable doubt
that appellant unlawfully appropriated the over-issued benefits by deceiving the
State.  See Jackson, 443 U.S. at 326; Evans, 202 S.W.3d at
161.

Appellant argues that the evidence is factually
insufficient because the State (1) should have known that appellant’s
representations that she received no income were false due to discrepancies in
her application; and (2) had actual knowledge of her employment as of December
19, 2006.  Appellant also argues that Vazquez failed to properly verify that he
was talking to appellant during the September 5, 2006 telephone interview.  In
addressing appellant’s argument, we assume without deciding that the State’s
knowledge of appellant’s deception could render the evidence insufficient.

Appellant argues that the State should have known
that appellant’s representations were false because a TWC report showed that
appellant earned wages during the second quarter of 2006.  Vazquez testified
that he printed out a TWC report before interviewing appellant on September 5,
2006.  The report showed that appellant had earned $2,049.25 in the first
quarter of 2006 and $307.38 in the second quarter of 2006.  Vazquez testified
that the first quarter included the months of January, February, and March, and
the second quarter included the months of April, May, and June.  Appellant told
Vazquez during the interview that she quit her job at Pappadeaux Restaurant in
March 2006.  Vazquez testified that the TWC report supported appellant’s
statement because appellant probably received her last paycheck in April if she
quit her job in March.  Accordingly, Vazquez testified that there were no
discrepancies between appellant’s application and the TWC report. 

Appellant also argues that the State should have
known that appellant’s representations were false because appellant’s expenses
exceeded her household’s income. Appellant told Vazquez she did not have any
expenses.   Appellant stated that she lived with her mother and did not have to
pay rent or utility bills.  Based on this information, Vazquez testified that
there were no discrepancies on appellant’s application regarding her expenses
and her income because “everything [was] zero.”  

Appellant argues that Vazquez failed to properly
verify that he was talking to appellant during the September 5, 2006 telephone
interview.  Vazquez testified that he verified he was talking to appellant
“based on the questions [he] asked her about the children, Social Security, ID,
people that she live[s] with, [and] work history.”  Appellant offered no
evidence contradicting Vazquez’s testimony that he verified appellant’s
identity.    

Lastly, appellant argues that the State had actual
knowledge of her employment on December 19, 2006, because she stated that she
was employed by Pappadeaux Restaurant on her application for recertification. 
Appellant was certified to receive benefits for a six-month period running from
September 2006 through February 2007, based on her July 12, 2006 application.  Appellant
filed an application for recertification on December 19, 2006, which appellant
was required to file to receive benefits after February 2007.  On her December
19, 2006 application, appellant stated that she was employed by Pappadeaux
Restaurant.  

James Dylisaly, a TDHHS supervisor, testified that an
individual’s application for recertification does not affect the individual’s
current certification period.  Dylisaly testified that the only time a change in
an individual’s current certification period would occur “is if a change is
reported to our office.”  Appellant received and accepted benefits based on her
July 12, 2006 application throughout the duration of this certification period. 
  

Viewing the evidence in a neutral light, a reasonable
jury could have found beyond a reasonable doubt that appellant deceived the
State and intended to deprive the State of the over-issued welfare benefits for
the September 2006 to February 2007 period.  See Johnson, 23 S.W.3d at 11.  The evidence supporting the verdict is not so weak
that the verdict is clearly wrong and manifestly unjust.  See Watson,
204 S.W.3d at 414-15.

We overrule appellant’s second and third issues.

            In her first
issue, appellant argues that the evidence is legally insufficient to establish
that she received an over-issuance of more than $1,500 in welfare benefits.      


At trial, Rodgers testified that he calculated the
welfare benefits appellant would have been entitled to receive each month between
September 2006 and February 2007 had she reported that she was employed; he did
so by inputting her income into a computer program called the Automated System of
the Inspector General.  Rodgers compared these calculations to benefits
appellant actually received during each month of that period and determined
that appellant had received an over-issuance of $1,806.13 in welfare benefits
over the six-month period.[2] 
  

On appeal, appellant first attacks Rodgers’s credibility
regarding his calculations of the amount of Medicaid benefits appellant
received from September 2006 to February 2007.  Appellant argues that Rodgers
“did not know what the codes referenced on State’s Exhibit Two meant nor could
he explain what the codes meant to the jury.”  

Rodgers testified that he asked the agency that
administers the benefits to list the Medicaid benefits paid to appellant
between September 2006 and February 2007.  Rodgers testified he received State’s
Exhibit 2 in response to his request; this exhibit is a “usage report” and
“vendor drug report” from June 30, 2006 to March 1, 2007.  State’s Exhibit 2
does not reference Medicaid or appellant by name anywhere in the report;
rather, it uses various codes.  Rodgers testified that State’s Exhibit 2 uses codes
to identify medical providers who have submitted bills for care provided to
appellant.  Rodgers testified that he does not know which medical providers are
identified by the codes.  State’s Exhibit 2 also references the same identification
number linked to appellant in State’s Exhibit 1, which lists the food stamp
benefits that appellant received and expressly identifies appellant by name.  

We reject appellant’s
contention that Rodgers’s lack of knowledge regarding the codes assigned to
medical providers goes to his credibility.  The codes at issue related to the
identity of the providers — not to appellant’s identity.  Appellant does not
dispute that the unique identification number included in State’s Exhibit 1 and State’s Exhibit 2 is hers.  In any
event, the fact finder is the sole judge of the facts, the credibility
of the witnesses, and the weight to be given the evidence.  Wyatt v. State,
23 S.W.3d 18, 30 (Tex. Crim. App. 2000); Beckham v. State, 29 S.W.3d
148, 151 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d).  The fact finder
may believe or disbelieve all or part of any witness’s testimony.  Jones v.
State, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998) (en banc).  The fact
finder is in the best position to evaluate the credibility of witnesses and the
evidence, and we must afford due deference to its determination.  Marshall
v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).  To the extent that
appellant’s complaints could be construed as a challenge to Rodgers’s
credibility, resolution of such a challenge rests within the fact finder’s
province. 

Appellant next argues that Rodgers’s calculations are
inaccurate because appellant is entitled to an “earned income deduction” under title
7 of the Code of Federal Regulations section 273.10(e)(1),[3]
and Rodgers did not account for this deduction in his calculations.  According
to appellant, Rodgers should have subtracted “an amount equal to twenty percent
of her earned income” from her total gross monthly earned income when
calculating the amount of benefits she would have been entitled to receive had
she reported her income.  Appellant asserts that the over-issuance of benefits was
$1,456.13 after factoring in the 20 percent “earned income deduction.”  

In determining an individual’s eligibility for food
stamp benefits, TDHHS follows federal regulations.  1 Tex. Admin. Code
§ 372.408 (2010).  A state agency “do[es] not apply the earned income
deduction to that part of any earned income that the household failed to report
in a timely manner when this act is the basis of the claim.”  7 C.F.R. § 273.18(c)(1)(ii)(B)
(2010).  Appellant argues that she nonetheless is entitled to the earned income
deduction, and that section 273.18 does not apply in a criminal proceeding.  In
support of her argument, appellant cites one California Supreme Court case and
two California Court of Appeals cases.  See People v. Crow, 864 P.2d 80,
87 (Cal. 1993) (“[T]he defrauded agency’s ‘loss’ should be calculated by
subtracting the amount the government would have paid had no acts of fraud
occurred from the amount the government actually paid. Any money that the
government would have been obligated to pay had the fraud not occurred is not
attributable to the fraud, and thus is not a ‘loss’ arising out of the criminal
offense.”); People v. Akins, 27 Cal. Rptr. 3d 815, 820 (Cal. Ct. App.
4th 2005) (applying Crow and holding that criminal defendant was
entitled to 20 percent earned income deduction for purposes of calculating
State’s loss); People v. Hudson, 7 Cal. Rptr. 3d 114,117 (Cal. Ct. App.
4th 2004) (same).  

Texas courts have not addressed this issue, and we do
not decide this issue here. Even assuming for argument’s sake that appellant
was entitled to an offset based on the earned income deduction, appellant bore
the burden to produce evidence of her entitlement to and the amount of any such
offset.  See Tex. Penal Code § 31.08(d) (Vernon 2003); Riley v.
State, No. 01-07-00718-CR, 2009 WL 3050878, at *6 (Tex. App.—Houston [1st
Dist.] Sept. 18, 2009, pet. ref’d).  The State presented evidence that
appellant received an over-issuance of $1,806.13 from September 2006 to
February 2007.  Appellant did not raise the offset issue in the trial court and
did not present any evidence to support her claim of entitlement to an offset
based on the earned income deduction.  Therefore, even if appellant were
entitled to an offset, she failed to meet her burden of proof regarding any
offset based on the earned income deduction.      

Viewing the evidence in the light most favorable to
the verdict, the jury could have found beyond a reasonable doubt that appellant
received an over-issuance of more than $1,500 in welfare benefits.  See Jackson,
443 U.S. at 326; Evans, 202 S.W.3d at 161.    

We overrule appellant’s first issue.

Conclusion

We affirm the trial court’s judgment.

 

                                                                                    

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

Panel consists of Justices Frost,
Boyce, and Sullivan.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1]
Appellant calculated this amount by adding up the over-issued welfare benefits
that, according to Rodgers, she received in September, October, November, and
December 2006.  Rodgers testified that appellant received an over-issuance
during this period totaling (1) $1,155 in food stamp benefits; and (2) $86.34
in Medicaid benefits.





[2]
Rodgers testified that appellant received an over-issuance of food stamp
benefits of $164 in September, $191 in October, $400 in November, $400 in
December, $177 in January, and $182 in February.  Rodgers also testified that
appellant received an over-issuance of Medicaid benefits of $28.78 in
September, $39.25 in October, $0 in November, $51.88 in December, $172.22 in
January, and $0 in February.  





[3]
Section 273.10(e)(1) states in part as follows:

To determine a household’s net
monthly income, the State agency shall:

 

(A)
Add the gross monthly income earned by all household members and the total
monthly unearned income of all household members, minus income exclusions, to
determine the household’s total gross income. Net losses from the
self-employment income of a farmer shall be offset in accordance with §
273.11(a)(2)(iii). 

 

(B)
Multiply the total gross monthly earned income by 20 percent and subtract that
amount from the total gross income; or multiply the total gross monthly earned
income by 80 percent and add that to the total monthly unearned income, minus
income exclusions. If the State agency has chosen to treat legally obligated
child support payments as an income exclusion in accordance with §
273.9(c)(17), multiply the excluded earnings used to pay child support by 20
percent and subtract that amount from the total gross monthly income . . . .

 

7 C.F.R. § 273.10(e)(1)
(2010).